AMIN TALATI WASSERMAN, LLP
Matthew R. Orr, Bar No. 211097
William P. Cole, Bar No. 186772
Richard L. Hyde, Bar No. 286023
515 South Flower St., 18th Floor
Los Angeles, CA  90071
Tel:    (213) 933-2330
Fax:    (312) 884-7352
matt@amintalati.com
william@amintalati.com
richard@amintalati.com

Attorneys for Defendant REBBL, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MEHVA ROFFMAN, as individual, on behalf of herself, the general public and those similarly situated, | Case No.:  3:22-cv-05290-TSH<br>Judge: Magistrate Judge Thomas S. Hixson<br>Courtroom G- 15th Floor |
|     Plaintiff, | **DEFENDANT REBBL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| REBBL, INC., | **Date: 12/22/22**<br>**Time: 10:00 a.m.** |
|     Defendant. | |

DEFENDANT REBBL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

## NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 22, 2022 at 10:00 a.m. or as soon thereafter as may be heard, Defendant REBBL, Inc. will, and hereby does, move the Court for an order dismissing Plaintiff's Complaint and each claim asserted therein.

This motion is made pursuant to Federal Rule of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6) on the grounds that Plaintiff's allegations fail to state a valid claim upon which relief can be granted and that the Court lacks subject-matter jurisdiction because Plaintiff has no standing.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice, the pleadings and files in this action, and such other matters as may be presented at or before any hearing on this motion.


Dated:  November 16, 2022                          AMIN TALATI WASSERMAN, LLP


                                                   /s/ *Matthew R. Orr*
                                                      Matthew R. Orr

                                                   Attorneys for REBBL, Inc.

DEFENDANT REBBL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff's claims are expressly preempted by the FDCA.

2.      Whether Plaintiff's claims are impliedly preempted pursuant to *Buckman Co v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

3.      Whether Plaintiff lacks Article III standing to pursue her claims because she has not shown an injury in fact.

4.      Whether Plaintiff lacks standing to pursue claims for injunctive relief.

5.      Whether Plaintiff lacks standing to pursue claims relating to products that she did not purchase.

6.      Whether Plaintiff has adequately alleged injury and reliance to support her claims under the UCL, FAL, and CLRA.

7.      Whether Plaintiff's claim for unjust enrichment is recognized as an independent cause of action.

8.      Whether Plaintiff has properly alleged that her legal remedies are inadequate such that she may seek equitable remedies.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND............................................................................. 2

     A.    Regulation of Nutrition Information On Product Labels .................................... 2

     B.    FDA Requires Use of the Nitrogen Test, Not Plaintiff's Suggested PDCAAS Test, For Measuring The Total Amount of Protein in Grams Per Serving.......... 2

     C.    FDA Requirements for Calculating The Percent Daily Value For Protein ........ 3

     D.    REBBL's Protein Labeling Is Proper .................................................................. 5

III.    ARGUMENT ................................................................................................... 6

     A.    Plaintiff's Claim That Protein Labeling Claims Are Required To Be Corrected For Digestibility is Expressly Preempted .......................................................... 6

     B.    Plaintiff's Claims Based On The Absence Of The Percent Daily Value Statement Are Impliedly Preempted Under *Buckman* ...................................... 10

     C.    Plaintiff's Claims Fail For Additional Reasons ................................................. 13

          1.    Plaintiff Lacks Standing Regarding Products She Did Not Purchase... 13

          2.    Plaintiff Lacks Standing To Pursue Injunctive Relief ......................... 15

          3.    Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law ........... 17

          4.    Plaintiff Fails To Adequately Allege That She Has No Adequate Legal Remedies, Such That Equitable Restitution Is Warranted.................... 17

IV.    CONCLUSION................................................................................................ 18

## **TABLE OF AUTHORITIES**

**State Cases**

*DeHavilland v. FX Networks, LLC*, 21 Cal.App.5th 845 (2018)..................................................17

**Federal Cases**

*Auer v. Robbins*, 519 U.S. 452 (1997) ...............................................................................7

*Bakopoulus v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215 (N.D. Ill. July 12, 2021)........................................................................................................................14

*Bassiri v. Xerox Corp.*, 463 F.3d 927 (9th Cir. 2006)............................................................7

*Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769 (C.D. Cal. 2019) ..............................10, 12

*Brodsky v. Apple Inc.*, 445 F.Supp.3d 110 (N.D. Cal. 2020) ...................................................17

*Brown v. Kellogg Company*, Case No. 3:21-cv-07388-VC, 2022 WL 983268 (N.D. Cal. Apr. 1, 2022).........................................................................................................................1

*Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ... 1

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) ...............................10, 11, 12

*Chong v. KIND LLC*, 585 F. Supp.3d 1215 (N.D. Cal. 2022) ...................................1, 8, 9, 11, 13

*Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897 (N.D. Cal. July 1, 2021) ........................................17

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). ...............................................................15

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .............................................................16

*Cmty. Nutrition Inst. v. Young*, 773 F.2d 1356 (D.C. Cir. 1985).................................................8

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006).............................................................15

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).............................................15

*DeBons v. Globus Med., Inc.*, 2014 WL 12495351 (C.D. Cal. Aug. 8, 2014), *aff'd*, 668 F. App'x 258 (9th Cir. 2016) .........................................................................................................13

*Durnford v. Musclepharm Corp.*, 907 F.3d 595 (9th Cir. 2018) ............................................6, 9

*Figgy v. Frito-Lay N. Am., Inc.*, 67 F.Supp.3d 1075 (N.D. Cal. 2014) .......................................14

*Fraker v. KFC Corp.*, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ........................................... 10

*Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020)18

*Goldsmith v. Allergan, Inc.*, 2011 WL 147714 (C.D. Cal. Jan. 13, 2011) .................................... 10

*Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. Jul. 11, 2012)14

*Gubala v. CVS Pharmacy, Inc.*, 2016 WL 1019794 (N.D. Ill. March 15, 2016) ........................ 10

*In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, 590 F. Supp. 2d 1282 (C.D. Cal. 2008) ............................................................................................................................. 10

*In re Trader Joe's Tuna Litigation*, 2017 WL 2408117 (C.D. Cal. June 2, 2017), .................... 11

*Jackson v. General Mills, Inc.*, No. 18-CV-2634-LAB (BGS), 2020 WL 2106652 (S.D. Cal. Aug. 28, 2020). ............................................................................................................... 15, 16

*Jian Zhang v. Nielsen*, 2019 WL 5303276 (C.D. Cal. Oct. 17, 2019) ........................................... 7

*Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2020)15

*Joslin v. Clif Bar & Co.*, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .................................... 16

*Julian v. TTE Tech., Inc.*, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ............................ 17, 18

*Klein v. Facebook, Inc.*, 580 F.Supp.3d 743  (N.D. Cal. 2022) .................................................... 17

*Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 5901 (9th Cir. 2018) ...................................... 16

*Lorentzen v. Kroger Co.*, 532 F.Supp.3d 901 (C.D. Cal. 2021). ........................................... 14, 15

*Loreto v. Procter & Gamble Co.*, 515 F. App'x. 576 (6th Cir. 2013) .......................................... 13

*Mee v. IA Nutrition, Inc.*, 2015 WL 2251303 (N.D. Cal. May 13, 2015) ...................................... 9

*Nacarino v. Kashi Co.*, 584 F. Supp.3d 806 (N.D. Cal. 2022) ................................................. 1, 9

*Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs., Inc.*, 2020 WL 6555052 (C.D. Cal. Oct. 29, 2020) ....................................................................................................................... 12

*Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013) .................................................................... 11

*Phan v. Sargento Foods, Inc.*, 2021 WL 2224260 (N.D. Cal. June 2, 2021) ........................ 17, 18

*Porter v. NBTY, Inc.*, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ............................................. 9

*Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018).... 17

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ........................................ 17, 18

2

TABLE OF AUTHORITIES

*Stengel v. Medtronic, Inc.*, 704 F.3d 1224 (9th Cir. 2013) .........................................................12

*Turek v. Gen. Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011) ............................................................7

*Ulrich v. Probalance, Inc.*, 2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ...............................9

*Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) .................11

*Yumul v. Smart Balance, Inc.*, 2011 WL 1045555 (C.D. Cal. Mar. 14, 2011) ...........................6

**Statutes**

21 C.F.R. § 101.9 ...................................................................................................2, 3, 4

21 C.F.R § 101.13 ..............................................................................................................2

21 U.S.C. § 337 ...........................................................................................................10, 13

21 U.S.C. § 343 ...............................................................................................................2, 6

21 U.S.C. § 343-1 .....................................................................................................6, 10, 11

Cal. Bus. & Prof. Code §17204 ..........................................................................................15

Cal. Bus. & Prof. Code § 17535 .........................................................................................15

Cal. Civ. Code § 1780 ........................................................................................................15

Cal. Health & Safety Code § 110100 ..................................................................................12

TABLE OF AUTHORITIES

1

**I.      INTRODUCTION**

2

      This lawsuit centers on front label and Nutrition Facts Panel ("NFP") protein statements

3

on certain REBBL brand Plant Powered Elixir beverages. REBBL states the protein content of

4

its products, in grams, as measured using the FDA-approved "nitrogen method." Plaintiff claims

5

she was deceived because total protein is declared, not the "usable" protein as measured

6

according to *Plaintiff's* preferred methodology. Plaintiff argues REBBL must (a) calculate

7

protein content using an amino acid test, (b) adjust the nitrogen protein content in grams to reflect

8

digestibility ("PDCAAS"); and/or (c) include a Percent of Daily Value ("PDV") in the NFP

9

using PDCAAS.

10

      Although the underlying regulatory scheme at issue in this case may at times seem

11

convoluted, the dispositive material inquiry is simple: Is Plaintiff permitted to dictate a method

12

of protein calculation for food labels that conflicts with a method specifically authorized under

13

the Food, Drug, and Cosmetic Act ("FDCA"). The simple answer to this simple inquiry is "no."

14

FDA regulations expressly permit REBBL to state the amount of protein in product NFP's and

15

elsewhere (1) using the nitrogen method (Nitrogen x 6.25) and (2) without adjusting the number

16

to reflect protein digestibility.

17

      No fewer than four other courts in this district have rejected Plaintiff's theory of liability.

18

*See Nacarino v. Kashi Co.*, 584 F. Supp.3d 806 (N.D. Cal. 2022) ("*Nacarino*"), *Chong v. KIND*

19

*LLC*, 585 F. Supp.3d 1215 (N.D. Cal. 2022) ("*Chong*"); *Brown v. Natures Path Foods, Inc*.,

20

2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ("*Natures Path*"); and *Brown v. Kellogg*

21

*Company*, Case No. 3:21-cv-07388-VC, 2022 WL 983268 (N.D. Cal. Apr. 1, 2022) ("*Kellogg*").

22

In each those cases, as here, the plaintiffs contended food labels were unlawful because the

23

defendants did not calculate the "corrected amount of protein per serving" based on the quality

24

of the product's protein using an alternate PDCAAS method. The plaintiffs also contended, as

25

here, that the front label protein claims were unlawful because the defendants did not provide a

26

statement of that corrected amount of protein per serving in the NFP, expressed as a percentage

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

of daily value. In each case, however, courts in this district held the plaintiffs' claims were preempted. This case is no different. Plaintiff's claims are preempted and must be dismissed.

For these and other separate grounds detailed below, this Court can and should dismiss Plaintiff's Complaint in its entirety with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Regulation of Nutrition Information On Product Labels

This case relates to the amount of protein per serving of food products and FDA regulations governing the labeling of that amount. The Federal Food, Drug, and Cosmetic Act ("FDCA") and the FDA implementing regulations promulgated under it require that the amount of "total protein" per serving appear on the label. 21 U.S.C. § 343(q)(1)(D). This nutrition information, referred to by FDA as nutrition labeling, appears in the Nutrition Facts box on the label, which is subject to precise regulations appearing at 21 C.F.R. § 101.9. A food manufacturer is allowed to take the nutrition information from the Nutrition Facts box and place it elsewhere on a food label. *Id.* § 101.13(b) & (c). FDA regulations mandate that the accuracy of nutrition statements appearing on the front of a label "be determined using the analytical methodology prescribed for determining compliance with nutrition labeling in [21 C.F.R.] § 101.9," which requires product testing to include twelve samples. *Id.* § 101.13(o).

REBBL places the total amount of protein per serving as calculated per the governing FDA regulation and identified in the Nutrition Facts box and places that figure on the front of its beverages.

### B.   FDA Requires Use of the Nitrogen Test, Not Plaintiff's Suggested PDCAAS Test, For Measuring The Total Amount of Protein in Grams Per Serving

Plaintiff's allegations regarding "corrected" amounts notwithstanding, FDA regulations specifically state that the total amount of protein by weight in grams in a food product must be "calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' except when official AOAC procedures described in this paragraph (c)(7) require

**MEMORANDUM OF POINTS AND AUTHORITIES**

a specific factor other than 6.25, that specific factor shall be used." 21 C.F.R. § 101.9(c)(7). As the FDA has explained, these regulations "require" that protein content be measured according to this method. FDA Final Rule, Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33742, 33868 (May 27, 2016); *see also id.* at 33869 ("For purposes of nutrition labeling, among others, protein is estimated by determining the nitrogen content of an ingredient and multiplying it by a nitrogen-to-protein conversion factor."). Neither FDA nor the governing regulation alters the required nitrogen method for measuring the total amount of protein when the product makes a front-of-pack protein claim.

Plaintiff's Complaint contains no allegation regarding whether and how she tested the protein content in REBBL's beverages in order to arrive at her stated conclusion: that REBBL, by using the protein measurement method required by the FDA, has deceived the public by overstating the amount of digestible protein contained within its products. Instead, without any specific allegations as to the actual amount of protein per serving contained within REBBL's products, Plaintiff's Complaint argues that the amount of *digestible* protein *could* theoretically be lower than what is represented on the product. Conspicuously absent from Plaintiff's Complaint is any allegation that REBBL overstated or improperly calculated the amount of protein found in its beverages under the nitrogen method. Indeed, Plaintiff's Complaint makes no reference whatsoever to the nitrogen method that the FDA requires food producers to utilize for calculating protein amounts.

## C. FDA Requirements for Calculating The Percent Daily Value For Protein

FDA regulations regarding protein labeling also contain specific requirements for calculating and labeling a percent daily value for protein in the Nutrition Facts box:

> (i) A statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, ***calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as Percent of Daily Value***, may be placed on the label, except that such a statement ***shall*** be given ***if a protein claim is made for the product***, or if the product is represented or purported to be specifically for infants through 12 months or children 1 through 3 years of age. ***When such a declaration is provided, it should be placed on the label adjacent***

> *to the statement of grams of protein and aligned under the column headed*
> *"Percent Daily Value," and expressed to the nearest whole percent.*

21 C.F.R. § 101.9(c)(7)(i) (emphasis added).

As specified in the regulations, the "corrected amount of protein per serving" to be expressed as a percent of daily value is determined by applying the PDCAAS to the total amount of protein. 21 C.F.R. § 101.9(c)(7)(ii). PDCAAS is a methodology used to score the "quality" of protein based on how it is digested (absorbed) by the body. *See generally* Food Labeling: Mandatory Status of Nutrition Labeling and Nutrient Content Revision, Format for Nutrition Label, 58 Fed. Reg. 2079, 2103 (Jan. 6, 1993). PDCAAS is not a test conducted on the food. Rather, PDCAAS is a calculation that compares the amount of the essential amino acids in the food to a scoring pattern derived from the essential amino acid requirements of a preschool-age child. *Id.* at 2104. The highest PDCAAS value that any protein can achieve is 1.0, indicating that the protein will provide 100% (or more) of all the amino acids required in the diet. *See* 21 C.F.R. § 101.9(c)(7)(ii). To underscore, PDCAAS does ***not*** provide a quantitative measure of the total amount of protein in a food product and it would be inappropriate to use it as a methodology to do so. Rather, PDCAAS seeks to rank the purported quality of the protein by what percentage of the protein is digested by the body. That is why the regulations require PDCAAS scoring ***solely*** in connection with the calculation of the percent daily value.[1]

As noted by FDA, and relevant here, PDCAAS scoring does not indicate the value of individual proteins consumed as part of a mixed diet because the calculation of the corrected amount of protein of a food does not take into account the complementary potential of the food in a mixed diet, i.e., how a food rich in a particular essential amino acid can "complement" a food low in that amino acid to result in a total diet that provides sufficient amounts of the amino

---

[1] FDA does not require that the percent daily value for protein be provided in a standard Nutrition Facts box because, based on current scientific evidence, people get sufficient protein from a normal daily diet. *See* FDA, *A Food Labeling Guide: Guidance for Industry* 30 (Jan. 2013), *available at* https://www.fda.gov/media/81606/download. *See* Request for Judicial Notice ("RJN"), **Exh. 1**.

acid. 58 Fed. Reg. at 2105. In their first round of lawsuits on their protein theory, Plaintiff's counsel has chosen to target food manufacturers that feature plant-based proteins because those proteins have a lower PDCAAS score than animal-based proteins. Contrary to Plaintiff's allegations, because humans do not consume only a single type of protein and different sources of protein complement each other, the proteins in REBBL's products are not somehow inferior, regardless of their PDCAAS score.

### D.      REBBL's Protein Labeling Is Proper

FDA's protein labeling regulations require that: (i) the quantitative (weight in grams) measurement of total protein per serving appear in the NFP and be calculated by the nitrogen method; (ii) the percent daily value appear in the NFP in limited circumstances, and when it does it is to be determined by adjusting for digestibility using PDCAAS; and (iii) a quantitative statement of protein quantity on the front-of-pack must be the ***same*** as the total amount of protein per serving stated in the Nutrition Facts box (calculated by the nitrogen method).

Notably, FDA's interpretation of the protein labeling regulations is uniform across federal government agencies that regulate food products. Specifically, the U.S. Department of Agriculture ("USDA")—which regulates and oversees meat, egg, and poultry products—has the same regulations regarding protein labeling as FDA products. *See* 9 C.F.R. § 317.309(c)(7) (requiring use of the nitrogen method to measure total protein per serving) and § 317.309(c)(7)(i) (requiring that the percent daily value be calculated by adjusting for digestibility using PDCAAS). Significantly, and entirely consistent with the above, USDA and the U.S. Food Safety and Inspection Service ("FSIS") recognize that quantitative protein statements on the front-of-pack should match the total amount of protein indicated in the Nutrition Facts box. *See* FSIS Compliance Guideline for Label Approval (July 2020) at pp. 8-9, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/2020-10/Label-Approval-Guide.pdf; RJN **Exh. 2**

FDA and USDA regulations' consistency in permitting a single uniform methodology (the nitrogen method) to be used to calculate the total protein by weight in grams for *all* food

products is not by accident. One of Congress' (and FDA's and USDA's) primary goals in establishing nutrition labeling for packaged food was to allow consumers to *compare* the *same* nutritional information between and amongst different food products. That salutary purpose would be completely lost if there was not uniformity amongst food labels as to the methodology used to calculate the total amount of protein per serving for food products and if food products contained different (and thereby contradictory) quantitative measurements of the total amount of protein per serving based on where on the label the statements were located.

## III.   ARGUMENT

### A.   Plaintiff's Claim That Protein Labeling Claims Are Required To Be Corrected For Digestibility is Expressly Preempted

The crux of Plaintiff's complaint is that all of REBBL's front-of-pack protein claims are deceptively overstated because they have not been adjusted for digestibility using PDCAAS. *See* Complaint, ECF No. 1 ("Compl.") ¶¶ 4-6, 21. But what Plaintiff is seeking to require would transform a truthful labeling statement identifying the *total* amount of protein according to the FDA mandated measurement method into a deceptive one that only identifies a subset of total protein, i.e., the "complete" proteins. In that way, Plaintiff's claims seek to impose labeling requirements "that are not identical to the requirement[s]" of the FDCA, and they are expressly preempted. *See* 21 U.S.C. § 343-1(a). "If a claim is preempted by federal law, it fails to state a claim upon which relief can be granted under Rule 12(b)(6)." *Yumul v. Smart Balance, Inc*., 2011 WL 1045555, at *5 (C.D. Cal. Mar. 14, 2011). Although "a presumption against preemption applies to the extent the FDCA is used to displace state law in an area of traditional state police power," *Durnford v. Musclepharm Corp.*, 907 F.3d 595, 601 (9th Cir. 2018), that presumption is overcome where, as here, Plaintiff's claims seek to require something that the FDCA does not. *Id*. at 603.

The key issue in any preemption analysis is determining whether a plaintiff's claims would impose obligations that are *not identical* to FDA regulations. FDA itself, in its own regulations, clarifies that "not identical to" in the context of preemption under 21 U.S.C. § 343-

1 means that the "state requirement *directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food*, or concerning a food container, that: (i) are *not imposed by or contained in* the applicable provision (including any implementing regulation) of section 401 or 403 of the act; *or* (ii) *differ from those specifically imposed by or contained in* the applicable provision (including any implementing regulation) of Section 401 or 403 of the act." 21 C.F.R. § 100.1(c)(4)(i)-(ii) (emphasis added). As Judge Posner explained:

> Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, *consistency is not the test; identity is*. Maybe such disclaimers would be a good thing . . . and the FDA should require them, but that is irrelevant to this appeal.

*Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (emphasis added).

Accordingly, to deny REBBL's Motion, this Court would have to conclude that with respect to REBBL's protein claim, FDA regulations require that (i) an amino acid test be used to measure total protein quantity, and (ii) a PDCAAS digestibility adjustment be applied to the results of the amino acid test. But it is not a close question because the regulations make clear that there are no such requirements—meaning that Plaintiff's proposed requirements would be additional and not identical to FDA regulations. FDA regulations specifically state that the total amount of protein by weigh in grams in a food product must be "calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' except when official AOAC procedures described in this paragraph (c)(7) require a specific factor other than 6.25, that specific factor shall be used." 21 C.F.R. § 101.9(c)(7). As the FDA has explained, these regulations "require" that protein content be measured according to this method.[2] FDA

---

[2] The FDA's interpretation of its own regulation is, of course, entitled to deference. *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) ("But where an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under Auer unless 'plainly erroneous or inconsistent with the regulation.'") (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *Jian Zhang v. Nielsen*, 2019 WL 5303276, at *7 n.5 (C.D. Cal. Oct. 17, 2019) (applying *Bassiri*).

**MEMORANDUM OF POINTS AND AUTHORITIES**

Final Rule, Food Labeling; Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33742, 33868 (May 27, 2016).

The FDA could have mandated different requirements for REBBL's protein claims, but it chose not to. The regulations FDA did promulgate a mandate that the total amount of protein by weight be calculated using the nitrogen method, and there is no requirement that the total amount of protein by weight be adjusted for digestibility under any circumstances. *See* 21 C.F.R. § 101.9(c)(7). Likewise, the regulations provide that a PDCAAS digestibility adjustment must only be performed in connection with the determination of a percent daily value and is only expressed as a percentage of daily value. *See* 21 C.F.R. § 101.9(c)(7)(i). Moreover, "protein value" expressed as part of the percent daily value appears only on the NFP, not elsewhere on the label in connection with a protein claim. *Id.* Indeed, a "correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility." *Chong*, *supra*, 585 F.Supp.3d at 1219.

Any claims that a private plaintiff brings against REBBL must be consistent with those regulations. Even if this Court were to conclude that the Plaintiff's suggested requirements were consistent with the structure of the regulations or that it would be "incongruous" to require additional calculations for the PDV and not for a protein claim; the law does not permit Plaintiff or the Court to substitute their own judgment for that of FDA. *See Cmty. Nutrition Inst. v. Young*, 773 F.2d 1356, 1362 (D.C. Cir. 1985) ("Because of [FDA's] expertise and broad discretion" for food labeling and safety, the court "cannot substitute [its] judgment for the agency's [judgment]").

Further confirming that Plaintiff's theory is preempted, implying these suggested requirements into the existing regulations would lead to the incongruous result that a food label would have two different, conflicting, quantitative statements regarding the total amount of protein per serving between the front-of-pack and the NFP. Consumers would be unaware of the dueling methodologies and would not know how to compare or understand protein claims. As

**MEMORANDUM OF POINTS AND AUTHORITIES**

Ninth Circuit precedent has confirmed—requiring protein statements in the Nutrition Facts box to be adjusted for digestibility is in direct conflict with FDA regulations and is, therefore, preempted. *See Durnford*, *supra*, 907 F. 3d at 601-03. Nor would such a requirement make sense since the regulations and the NFP specifically refer to a measurement of the "total amount" of protein—not the total amount of "complete" proteins or only those proteins with a 1.0 PDCAAS. *See Nacarino*, *supra*, 584 F.Supp.3d at 810 (rejecting theory that protein quantity statements on packaging are misleading, even when extra digestibility information is required in a product's Nutrition Facts label, since to hold otherwise would require a finding that an FDA-approved measurement technique is inherently misleading).

Plaintiff's theory of deception hinges on new and different requirements for protein labeling, and because of that, it is expressly preempted, as the Ninth Circuit and district courts in this Circuit have previously recognized when confronted with this same or similar issue. *Durnford*, *supra*, 907 F.3d at 603 (claim that protein declaration in NFP was required to be adjusted for digestibility was preempted; the only permissible methodology for measuring total amount of protein is the nitrogen method); *Chong, supra,* 585 F.Supp.3d at 1219 (claims based on omission of protein % daily value in food product labels are preempted); *Mee v. IA Nutrition, Inc.*, 2015 WL 2251303, at *3 (N.D. Cal. May 13, 2015) (claim challenging use of nitrogen method to determine actual amount of protein was preempted because "it [sought] to base liability on defendant's failure to employ a testing procedure not imposed by or contained in any federal regulation, and, indeed, is a challenge to the very method allowed by the FDA"); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *4 (N.D. Ill. Aug. 18, 2017) ("the FDCA and its implementing regulations do not strictly require pure protein content claims . . . to be calculated according to the PDCAAS method"); *Porter v. NBTY, Inc.*, 2016 WL 6948379, at *5 (N.D. Ill. Nov. 28, 2016) ("[P]rotein content may be calculated using the nitrogen method, but it also must be stated as a percentage of the Daily Reference Value using the corrected amount of protein. This alternative to the nitrogen method is only required in the statement of percentage; it is not required for statements of absolute protein content."); *Gubala v. CVS Pharmacy, Inc.*, 2016 WL

**MEMORANDUM OF POINTS AND AUTHORITIES**

1019794, at *1, 12 (N.D. Ill. March 15, 2016) (defendant "was authorized by federal regulation to calculate protein content using the nitrogen content method," including for protein claims).

**B.     Plaintiff's Claims Based On The Absence Of The Percent Daily Value Statement Are Impliedly Preempted Under _Buckman_**

Plaintiff's claims based on the absence in certain REBBL products of the percent daily value in the NFP should be dismissed as impliedly preempted under _Buckman Co. v. Plaintiffs' Legal Committee_, 531 U.S. 341, 353 (2001). _Buckman_ preemption is a function of two principles. _First_, a consumer may not impose—under state law—food label requirements that are different from those imposed under the FDCA and its regulations. 21 U.S.C. § 343-1. _Second_, a consumer has no ability to privately enforce the FDCA. 21 U.S.C. § 337(a). Congress provided no private right of action under the FDCA and expressly wrote into the law that all enforcement is to be by the U.S. government (e.g., the U.S. Food and Drug Administration), and, in limited circumstances not present here, state agencies. _Id_. Consumers may not side-step the no-private-right-of-action principle by using alleged violations of the FDCA as a predicate for state-law claims. _See Borchenko v. L'Oreal USA, Inc._, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) (FDCA impliedly preempts plaintiffs' UCL claim); _Goldsmith v. Allergan, Inc._, 2011 WL 147714, at *8 (C.D. Cal. Jan. 13, 2011) ("No matter how artfully the Complaint is pleaded in attempting to enforce the FDCA, Plaintiff cannot enforce the FDCA's off-label advertising provisions simply by calling it a violation of the UCL."); _In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig._, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) ("[P]laintiffs may not use . . . state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA."); _Fraker v. KFC Corp._, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) ("[T]o the extent Plaintiff contends that alleged violations of the FDCA and Sherman Law give rise to viable state law claims, such claims are impliedly preempted by the FDCA."). Private claims that "exist solely by virtue of the FDCA" are not permitted. _Buckman_, 531 U.S. at 353.

As the Ninth Circuit held, flowing from these two principles, is a "'narrow gap' through which a state-law claim must fit to escape preemption by the FDCA: 'The plaintiff must be suing

1   for conduct that *violates* the FDCA (or else his claim is expressly preempted by [21 U.S.C. §

2   343-1], but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim

3   would be impliedly preempted under *Buckman*).'" *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th

4   Cir. 2013) (citation omitted). Here, Plaintiff cannot slide through this narrow gap. *See Chong*,

5   *supra*, 585 F.Supp.3d at 1219.

6        *In re Trader Joe's Tuna Litigation*, 2017 WL 2408117, at *2 (C.D. Cal. June 2, 2017), is

7   instructive. There, the plaintiffs alleged that Trader Joe's listed the accurate drained and net

8   weight of its product but omitted the pressed cake weight, thereby falsely representing that its

9   tuna cans contained an adequate amount of tuna. *Id.* at *3. The plaintiffs also alleged that "they

10  would not have purchased Trader Joe's tuna if they had known the cans' fill did not comply with

11  FDA standards." *Id.* at *3. The district court held that plaintiffs' claims were impliedly

12  preempted because "[i]n order to claim that Trader Joe's misrepresented that the tuna cans

13  contained an adequate amount of tuna, Plaintiffs must be relying on the FDA's pressed cake

14  weight standard, because the labels were otherwise accurate." *Id.* That is, "the *reason* the amount

15  in the tuna cans was [allegedly] inadequate is because it failed to meet the pressed cake weight

16  standard under 21 C.F.R. § 161.190." *Id.* at *4. "Consequently, the theory underlying [p]laintiffs'

17  state-law claims depends entirely on an FDA regulation," and the FDCA therefore preempts their

18  claims. *Id.*; *see also Buckman*, 531 U.S. at 353 (claims are preempted if "the existence of [the

19  FDCA] is a critical element in [Plaintiffs'] case"); *Verzani v. Costco Wholesale Corp.*, 2010 WL

20  3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("[Plaintiff's] persistent allegations that Costco's

21  labeling of the Shrimp Tray violates the FDCA['s] . . . regulations on the labeling of 'shrimp

22  cocktails' indicates that his true purpose is to privately enforce alleged violations of the FDCA,

23  rather than to bring a [state-law] claim for unfair and deceptive business practices."), *aff'd*, 432

24  F. App'x 29 (2d Cir. 2011).

25        The same is true here. Plaintiff's theory is unquestionably and entirely derivative of an

26  alleged violation of an FDCA regulation. Plaintiff alleges that REBBL's "failure to include a

27  statement of the corrected amount of protein" in the Nutrition Facts box violates the CLRA, FAL

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

and UCL and constitutes fraud because it allegedly violates an FDA food labeling requirement. Compl. ¶¶ 6, 21-22, 40, 48-49, 80, 86, 96, 106. Plaintiff "requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged" (Compl ¶¶ 81, 94, 116), which is merely another way of asking this Court to supplant the FDA in its statutory role of enforcing the FDCA. *Borchenko*, 389 F. Supp. 3d at 774.

Further, Plaintiff cannot default to an assertion that she is suing under California's Sherman Law (or rather, under state consumer-protection statutes to enforce the Sherman Law). Although the Supreme Court in *Buckman* did note that "certain state-law causes of actions that parallel federal [] requirements" may escape implied preemption, to fit within this escape hatch the state-law claims must "be relying on *traditional state tort* law which had predated the federal enactments in question[.]" *Buckman*, 531 U.S. at 353 (emphasis added); *see also Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013) (FDCA impliedly preempts any state-law claim that "'originates from, is governed by, and terminates according to federal law'"). The Sherman Law is statutory, not traditional state tort law. More significantly, it does not predate the FDCA. To the contrary, "the Sherman Law references and incorporates the FDCA," such that "[the] Court cannot grant any relief to Plaintiff[s] without referring to and applying provisions of the FDCA." *Borchenko*, 389 F. Supp. 3d at 773; *cf. Nexus Pharm., Inc. v. Cent. Admixture Pharm. Servs., Inc.*, 2020 WL 6555052, at *3 (C.D. Cal. Oct. 29, 2020) (recognizing that plaintiff is "suing to privately enforce the FDCA" where plaintiff's "claims exist only because of the FDCA's requirements"). Indeed, the Sherman Law provides that "[a]ll food labeling regulations *and any amendments to those regulations* adopted pursuant to the federal act, in effect on January 1, 1993, *or adopted on or after that date* shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a) (emphasis added). Thus, if FDA were to remove or modify a regulation on which plaintiffs rely, plaintiffs' claims would fail instantly because FDA's action would have the effect of also removing the requirement from the Sherman Law.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Put simply, Plaintiff's percent daily value claims could not exist independently of FDA regulations. Therefore, these claims are subject to *Buckman* preemption. The FDCA remains the "critical element" of Plaintiff's claims, in substance if not in form. *Loreto v. Procter & Gamble Co.*, 515 F. App'x. 576, 579 (6th Cir. 2013) ("The statute's public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance," even if not in form, "seeks to enforce the FDCA"). If Plaintiff's claims are nevertheless permitted to go forward, "the doctrine of implied preemption under 21 U.S.C. § 337(a) and *Buckman* would be almost entirely eliminated and private citizens would in effect be permitted to enforce the FDCA's requirements." *DeBons v. Globus Med., Inc.*, 2014 WL 12495351, at *4 (C.D. Cal. Aug. 8, 2014), *aff'd*, 668 F. App'x 258 (9th Cir. 2016).

*Chong*, 585 F.Supp.3d 1215, is on point. There, the plaintiff (represented by the same counsel as Plaintiff here) claimed that the defendant had failed to provide the protein "% Daily Value" on the label. *Id.* at 1219. The court held that any claims based on that theory were impliedly preempted under *Buckman*. *Id.* The court explained:

> Plaintiffs here are not pursuing pre-existing, traditional, state tort law claims, rather they rely on California's Sherman Law, which post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law. . . . As such, plaintiffs' claims based on the omission of the %DV in some of KIND's product labels are preempted. [Citation.] Those claims must also be dismissed. Because the defect again is one of theory, not factual sufficiency, no leave to amend will be granted.

*Id.* at 1219-20.

For these reasons, the Court must dismiss Plaintiff's claims as preempted.

## C.    Plaintiff's Claims Fail For Additional Reasons

### 1.    Plaintiff Lacks Standing Regarding Products She Did Not Purchase

Although Plaintiff alleges that she purchased "REBBL brand Plant Powered Elixir beverages in the Dark Chocolate, Vanilla, and Coffee flavors from a Whole Foods retail store in

San Francisco, California" she does not claim to have purchased "[f]our flavors of REBBL Plant Powered Elixir beverages" that she contends suffer from the same defects. (Compl. ¶¶ 16, 18, 62.)

Courts within the Ninth Circuit have split as to whether a plaintiff can assert claims for products she did not purchase. Some district courts have held that a plaintiff may bring suit for "substantially similar" products not actually purchased. *See, e.g., Figgy v. Frito-Lay N. Am., Inc.*, 67 F.Supp.3d 1075, 1083 (N.D. Cal. 2014). Others have concluded that absent economic injury, a plaintiff's claims for products she did not purchase must be dismissed for lack of standing. *See, e.g., Lorentzen v. Kroger Co.*, 532 F.Supp.3d 901, 908-09 (C.D. Cal. 2021).

The latter approach is correct. As recently held by Judge Blumenthal, the "substantial similarity" analysis is "inconsistent with the basic concept of standing." *Lorentzen*, 532 F.Supp.3d at 908. Judge Blumenthal explained:

> The similarity of a product, by itself, says nothing about whether a party suffered an injury traceable to the allegedly wrongful conduct of another. A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise). Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) . . . . Importing a "substantial similarity" test into the principle of standing overlooks this point and invites an analysis that is both difficult to apply and unrelated to its objective.

*Id*. at 909. The court concluded: "Plaintiff bought only one of the eight Products named in the SAC. She therefore did not suffer any injury—economic or otherwise—related to the other seven Products. Because there is no injury, Plaintiff lacks standing to assert these unrelated claims." *Id*.; *accord Bakopoulus v. Mars Petcare US, Inc*., No. 20 CV 6841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) ("Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products."); *Granfield v. NVIDIA Corp*., No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. Jul. 11, 2012) (plaintiff lacked standing to assert claims based on product models she did not purchase). Here, for these same reasons,

Plaintiff lacks Article III standing to assert claims regarding any of REBBL's products other than those products she claims to have purchased.

Plaintiff also lacks statutory standing under the UCL, FAL and CLRA with respect to the Products she did not actually purchase. To establish statutory standing under the UCL, FAL and CLRA, a plaintiff must allege that she suffered an "injury in fact" and "has lost money or property" as a result of defendant's alleged conduct. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). A plaintiff "cannot expand the scope of his claims to include a product he did not purchase" as he suffered no injury in fact with respect the unpurchased product and did not lose money or property with respect to the unpurchased product. *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2020); *accord Lorentzen*, 532 F.Supp.3d at 909 n.4.

Therefore, the Court should dismiss all of Plaintiff's claims with respect to any products Plaintiff did not purchase because she lacks Article III standing. Similarly, Plaintiff's UCL, FAL, and CLRA claims should be dismissed for lack of both Article III standing and statutory standing.

### 2.   Plaintiff Lacks Standing To Pursue Injunctive Relief

Plaintiff lacks Article III standing to pursue injunctive relief. To have standing to seek injunctive relief, a plaintiff must show that she is likely to suffer future injury from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Plaintiff bears the burden to establish standing for her injunctive relief claim. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 and n.3 (2006); *Jackson v. General Mills, Inc.*, No. 18-CV-2634-LAB (BGS), 2020 WL 2106652, at *5 (S.D. Cal. Aug. 28, 2020).

While a "customer who is deceived by false advertising may have standing to seek injunctive relief forbidding the defendant from engaging in the same false advertising again [,]" the "consumer must still establish the threat of actual and imminent injury." *Jackson*, 2020 WL 5106652, at *5 (discussing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (emphasis in original)). The "threatened injury must be certainly impending to constitute injury

---

15
**MEMORANDUM OF POINTS AND AUTHORITIES**

in fact, and . . . allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations omitted). Where a plaintiff is now aware of the allegedly misleading advertising claim, and can check the claim merely by looking at the product label, that plaintiff fails to plausibly allege any likelihood she will be deceived in the future. *Jackson*, 2020 WL 5106652, at *5.

Here, Plaintiff fails to plausibly allege a desire to purchase REBBL's products in the future. Plaintiff asserts that "[i]f the Products were reformulated to provide, in a usable form, the grams of protein that are represented on the labels, or the labels were reformulated to provide non-misleading information, Plaintiff *would likely* purchase them again in the future." Compl. ¶ 66 (emphasis added). The allegation that Plaintiff "would likely purchase" REBBL's products again is not sufficiently concrete. Plaintiff candidly admits that her willingness to consider repurchasing depends on REBBL reformulating its "Plant Powered" products—evidently to contain animal-based proteins. Accordingly, Plaintiff lacks standing to pursue injunctive relief. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (holding that the plaintiff's "would 'consider buying'" allegations and a mere intent to purchase the defendant's products in the future were insufficient to sustain Article III standing); *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) (plaintiffs lacked standing to pursue injunctive relief where they alleged defendant's product does not contain real white chocolate and suggested they "do not want products that do not contain real white chocolate").

Moreover, Plaintiff is now fully aware that REBBL's front-of-pack protein claim is a statement of the absolute quantity of protein that mirrors the Nutrition Facts box, that plant-based proteins are not always fully digested by humans, and that REBBL uses plant-based proteins in their products (Compl. ¶ 3, 5-6). That last is a fact which Plaintiff could also verify by simply reading the product's ingredient lists, or product claims. "[W]here a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff." *Jackson*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020).

**MEMORANDUM OF POINTS AND AUTHORITIES**

Accordingly, Plaintiff cannot establish a likelihood of future harm sufficient to confer standing to sue for injunctive relief. *See, e.g., Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906-07  (N.D. Cal. July 1, 2021); *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018).

### 3.    Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law

Plaintiff's unjust enrichment claim (fifth cause of action) also fails as a matter of law. While it is preempted for the reasons already explained, it also fails because California does not recognize a separate cause of action for unjust enrichment. *DeHavilland v. FX Networks, LLC*, 21 Cal.App.5th 845, 870 (2018) (stating "[u]njust enrichment is not a cause of action."); *Klein v. Facebook, Inc.*, 580 F.Supp.3d 743, 829  (N.D. Cal. 2022) (collecting cases). "[C]ourts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 132 (N.D. Cal. 2020).

### 4.    Plaintiff Fails To Adequately Allege That She Has No Adequate Legal Remedies, Such That Equitable Restitution Is Warranted

Plaintiff's claims for equitable restitution under the CLRA, FAL and UCL and for unjust enrichment also should be dismissed because they do not (and cannot) sufficiently allege the requisite inadequacy of legal remedies." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff offers the conclusory allegation that they "have no adequate remedy at law to obtain this restitution." Compl. ¶¶ 81, 92, 94, 113-114, 116, and 120. But "Plaintiffs have failed to explain how restitution could be different from [the] damages" they seek for the same alleged harm. *Julian v. TTE Tech., Inc.*, 2020 WL 6743912, at *4 (N.D. Cal. Nov. 17, 2020) (dismissing without prejudice UCL, FAL, CLRA, and unjust enrichment claims to the extent they seek equitable relief); *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *5-6 (N.D. Cal. June 2, 2021) (same as to consumer protection and unjust enrichment claims seeking restitution). Indeed, the only "damage" Plaintiff allegedly suffered is that she paid a price premium for the product, which means the alleged monetary harm for both legal and equitable claims is the alleged price premium. Compl. ¶¶ 10, 21, 56-57, 113. "[I]t is not an unfair burden to require

Plaintiffs to explain *why* legal remedies are inadequate in their pleading." *Phan*, 2021 WL 2224260, at *5 (emphasis added) (citing *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole")). Here, as in *Julian* and *Phan*, "Plaintiffs' claim for damages and restitution are not really different." *Julian*, 2020 WL 6743912, at *5. Therefore, the face of Plaintiff's complaint shows she has adequate remedies at law, and this Court must accordingly dismiss Plaintiff's claims for monetary equitable relief. *Sonner*, 971 F.3d at 844.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Defendant's Motion to Dismiss in its entirety.


Dated:  November 16, 2022                    AMIN TALATI WASSERMAN, LLP


                                             /s/ *Matthew R. Orr*
                                             Matthew R. Orr

                                             Attorneys for REBBL, Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## **CERTIFICATE OF SERVICE**

(United States District Court)

I hereby certify that on the 16th day of November, 2022, I caused the electronic filing of the foregoing document, through the CM/ECF system. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


/s/ *Matthew R. Orr*
Matthew R. Orr