**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MEHVA ROFFMAN, an individual, on behalf of herself, the general public, and those similarly situated,<br><br>                    Plaintiff,<br><br>         v.<br><br>REBBL, INC.,<br><br>                    Defendant. | Case No. 4:22-cv-05290-JSW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hon. Jeffrey S. White<br><br>Hearing Date: Feb. 3, 2023<br>Hearing Time: 9:00 a.m.<br>Courtroom: Zoom |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    Protein Quality Generally. ................................................................... 2

    B.    The Regulatory Framework. ................................................................ 3

    C.    Defendant's Products. .......................................................................... 4

III.    ARGUMENT ..................................................................................................... 4

    A.    Plaintiff's UCL Unlawful Claims Withstand Dismissal. ..................... 4

        1.    Plaintiff adequately pleads her unlawfulness claim, including standing. ........ 4

            i.    *The front label claim is unlawful.* ...................................... 4

            ii.    *The NFP is unlawful.* ......................................................... 6

        2.    *Buckman* preemption does not apply to the unlawful claims. ......................... 6

    B.    Plaintiff's CLRA and Fraud Claims Based on the Omission of the %DV are Not Expressly Preempted. ..................................................... 10

    C.    Rebbl's Other Arguments are Without Merit. ..................................... 11

        1.    Plaintiff has standing for injunctive relief. ................................ 11

        2.    Plaintiff has standing for products she did not purchase. ........... 12

        3.    Plaintiff adequately pleads an unjust enrichment claim. ............ 13

    D.    Plaintiff Requests Leave to Amend If Necessary. ................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Ang v. Bimbo Bakeries USA, Inc.*,
No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014) .................. 13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F. 3d 753 (9th Cir. 2015) ........................................................................ 13, 14

*Borchenko v. L'Oreal USA, Inc.*,
389 F. Supp. 3d 769 (C.D. Cal. 2019), *appeal dismissed*,
No. 19-55971, 2020 WL 4877519 1 (9th Cir. May 13, 2020) ...................................... 8

*Brazil v. Dole Food Co.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) ................................................................ 7

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022).......... 1, 11, 14

*Brown v. Van's Int'l Foods, Inc.* ("*Van's I*"),
No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 84477 (N.D. Cal. May 10, 2022) .......... passim

*Brown v. Van's Int'l Foods, Inc.* ("*Van's II*"),
No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 154627 (N.D. Cal. Aug. 22, 2022).... 1, 5, 6, 11

*Bruton v. Gerber Products Co.*,
703 F. App'x 468 (9th Cir. 2017).................................................................... 13

*Bruton v. Gerber Products Co.*,
961 F. Supp. 2d 1062 (N.D. Cal. 2013)............................................................... 9

*Buckman v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001) ........................................................................ 6, 7, 8, 9

*Chong v. Kind LLC*,
No. 21-cv-04528-RS, 2022 U.S. Dist. LEXIS 27438 (N.D. Cal. Feb. 15, 2022) ................. 8

*Clancy v. Bromley Tea Co.*,
308 F.R.D. 564 (N.D. Cal. 2013) ..................................................................... 9

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ........................................................................ 6

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018).................................................................... 2, 11, 12

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ........................................................................ 15

*Elgindy v. AGA Serv. Co.*,
No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269 (N.D. Cal. Mar. 29, 2021) ............... 15

*Friedman v. AARP, Inc.*,
855 F.3d 1047 (9th Cir. 2017)........................................................................ 4

*Gitson v. Trader Joe's Co.*,
63 F. Supp. 3d 1114 (N.D. Cal. 2014)............................................................... 13

*Goldsmith v. Allergan, Inc.*,
No. CV 09-7088 PSG (Ex), 2011 U.S. Dist. LEXIS 6233 (C.D. Cal. 2011) ...................... 8

*Grammens v. Bankers Standard Ins. Co.*,
No. 3:21-cv-06427-WHO, 2022 U.S. Dist. LEXIS 21705 (N.D. Cal. Feb. 7, 2022)................ 5

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ........................................................................ 9

*Hanna v. Plumer*,
   380 U.S. 460, 85 S. Ct. 1136 (1965) ........................................................................... 14

*Hawkins v. Kroger Co.*,
   906 F.3d 763 (9th Cir. 2018) ...................................................................................... 10

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) ............................................................................ 7

*In re Facebook, Inc.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ......................................................................... 13

*In re Juul Labs, Inc.*,
   No. 19-md-02913-WHO, 2020 U.S. Dist. LEXIS 197766 (N.D. Cal. Oct. 23, 2020) ............... 15

*In re S.C. Johnson & Son, Inc.*,
   No. 20-cv-03184-HSG, 2021 U.S. Dist. LEXIS 141101 (N.D. Cal. July 28, 2021) ............... 13

*In re Trader Joe's Tuna Litigation*,
   No. 2:16-cv-01371-ODW(AJWx), 2017 U.S. Dist. LEXIS 85093 (C.D. Cal. June 2, 2017) ....... 8

*In re Trader Joe's Tuna Litig.*,
   289 F. Supp. 3d 1074 (C.D. Cal. 2017) .................................................................. 8, 10

*Ivie v. Kraft Foods Global, Inc.*,
   961 F. Supp. 2d 1033 (N.D. Cal. 2013) ......................................................................... 9

*Klein v. Chevron U.S.A., Inc.*,
   137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ................................................................... 4

*Krommenhock v. Post Foods, LLC*,
   255 F. Supp. 3d 938 (N.D. Cal. 2017) ......................................................................... 10

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ................................................................................. 12

*Locklin v. StriVectin Operating Co.*,
   No. 21-cv-07967-VC, 2022 U.S. Dist. LEXIS 52461 (N.D. Cal. Mar. 23, 2022) .................. 13

*Loomis v. Slendertone Distribution, Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) .......................................................................... 7

*Loop AI Labs, Inc. v. Gatti*,
   No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 117268 (N.D. Cal. Sep. 2, 2015) ................ 13

*Madani v. Volkswagen Grp. of Am., Inc.*,
   No. 17-cv-07287-HSG, 2019 U.S. Dist. LEXIS 133926 (N.D. Cal. Aug. 8, 2019) ................ 15

*Milan v. Clif Bar & Co.*,
   489 F. Supp. 3d 1004 (N.D. Cal. 2020) ........................................................................ 12

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ......................................................................... 12

*Morgan v. Wallaby Yogurt Co.*,
   No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013) ............. 4, 7

*Nacarino v. Kashi Co.*,
   584 F. Supp. 3d 1215 (N.D. Cal. 2022) ......................................................................... 1

*Penikila v. Sergeant's Pet Care Prods., LLC*,
   442 F. Supp. 3d 1212 (N.D. Cal. 2020) ........................................................................ 13

*Pino v. Birch Benders, LLC*,
    No. 22-cv-02194-TSH, 2022 U.S. Dist. LEXIS 180804 (N.D. Cal. Oct. 3, 2022) ............. passim

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ........................................................................................... 6

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ........................................................................................... 5

*Ries v. Arizona Iced Tea*,
    287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................... 11

*Robinson v. Wells Fargo Home Mortg.*,
    No. 16-cv-01619-YGR, 2016 U.S. Dist. LEXIS 152925 (N.D. Cal. 2016) .................... 13

*Roffman v. Perfect Bar, LLC*,
    No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762 (N.D. Cal. Sep. 2, 2022) ............. passim

*Rojas v. Bosch Solar Energy Corp.*,
    443 F. Supp. 3d 1060 (N.D. Cal. 2020) .......................................................................... 13

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal.App.4th 221 (2014) ........................................................................................... 13

*Sagastume v. Psychemedics Corp.*,
    No. CV 20-6624 DSF (GJSx), 2020 U.S. Dist. LEXIS 247754 (C.D. Cal. Nov. 30, 2020) ....... 14

*Samet v. Procter & Gamble Co.*,
    No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) ................. 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ....................................................................................... 15

*Shay v. Apple Inc.*,
    No. 20cv1629-GPC(BLM), 2021 U.S. Dist. LEXIS 4033 (S.D. Cal. Jan. 8, 2021) ................. 15

*Silver v. BA Sports Nutrition, LLC*,
    No. 20-cv-00633-SI, 2022 U.S. Dist. LEXIS 78302 (N.D. Cal. Apr. 29, 2022)........................ 10

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................................... 14

*Stengel v. Medtronic Inc.*,
    704 F.3d 1224 (9th Cir. 2013) ...................................................................................... 8, 9

*Swearingen v. Santa Cruz Nat., Inc.*,
    No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432 (Cal. Aug. 17, 2016).............................. 7

*Vassigh v. Bai Brands LLC*,
    No. 14-cv-05127-HSG, 2015 U.S. Dist. LEXIS 90675 (N.D. Cal. 2015) ........................ 7, 9, 10

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ......................................................................................................... 7

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 685 (N.D. Cal. 2021) .............................................................................. 6

**Statutes**

21 U.S.C. § 343-1(a)(5) .................................................................................................... 7, 9

**Other Authorities**

58 Fed. Reg. 2079 ............................................................................................................... 3

58 Fed. Reg. 2102 ............................................................................................................... 3

58 Fed. Reg. 2302 ........................................................................................................... 4, 5

58 Fed. Reg. 2310 ............................................................................................................... 4, 5

**Rules**

Fed. R. Civ. P. 8(d)(3) ............................................................................................................. 2

**Regulations**

21 C.F.R. § 101.13 ............................................................................................................... 4, 5

21 C.F.R. § 101.13(b) .................................................................................................. 1, 3, 5, 11

21 C.F.R. § 101.13(n) .................................................................................................. 1, 3, 5, 11

21 C.F.R. § 101.9(c)(7) ........................................................................................................... 3

21 C.F.R. § 101.9(c)(7)(i) ............................................................................................... passim

21 C.F.R. § 101.9(c)(7)(ii) ................................................................................................... 2, 3

21 C.F.R. § 101.9(c)(7)(iii) ..................................................................................................... 1

I.    **INTRODUCTION**

Defendant Rebbl, Inc. ("Rebbl" or "Defendant") devotes most of its Motion to Dismiss to an ancillary claim that Plaintiff preserves solely for appeal purposes. That ancillary claim relates to the methodology used to support the protein claims that Rebbl makes on the front labels of its Plant Powered Elixir beverages, such as "16g protein." Plaintiff's primary claim, however, involves a fundamentally different theory. It alleges that Rebbl's front label protein claims are **_unlawful per se_**—not because of the methodology it used to calculate them—but because the regulations expressly prohibit them in this context. FDA regulations bar a front label protein claim unless the product provides a statement of the corrected amount of protein in the nutrition facts panel ("NFP") "expressed as" a percent daily value ("%DV"). 21 C.F.R. §§ 101.13(n) & (b); _id._ § 101.9(c)(7)(i) & (iii). Rebbl did not do this. Thus, its front label claims (as well as its NFPs) were strictly prohibited. _Id._ The cases that Rebbl relies on in support of its Motion to Dismiss, including _Nacarino_, _Brown_, and similar cases dealing with the misleading methodology theory are irrelevant to this claim.[1]

So far, three Courts have analyzed the unlawfulness claim: all three endorsed it. Judge Corley held that Plaintiff's theory follows "precisely what the regulations do." _Roffman v. Perfect Bar, LLC_, 2022 U.S. Dist. LEXIS 159762, at *10–11 (N.D. Cal. Sep. 2, 2022). Judge Orrick stated the claim "appears plausible" based on oral argument but noted it was not in the complaint in _Brown v. Van's Int'l Foods, Inc._ ("_Van's I_"), 2022 U.S. Dist. LEXIS 84477, at *22 (N.D. Cal. May 10, 2022). He then allowed it to proceed after an amendment added the theory. _Brown v. Van's Int'l Foods, Inc._ ("_Van's II_"), 2022 U.S. Dist. LEXIS 154627 (N.D. Cal. Aug. 22, 2022). Judge Hixon joined these courts as well. _See Pino v. Birch Benders, LLC_, 2022 U.S. Dist. LEXIS 180804, at *11–12 (N.D. Cal. Oct. 3, 2022).

Rebbl's primary defense to the unlawful prong claim is to argue that it is "impliedly preempted" as seeking "to privately enforce the FDCA." ECF 16 at ¶ 10. Not so. Plaintiff is not suing to enforce the FDCA (and expressly disclaims as such), but California's Sherman Law, which has

---

[1] Plaintiff asserts the methodology claim only to preserve it if the 9th Circuit reverses _Nacarino v. Kashi Co._, 584 F. Supp. 3d 1215 (N.D. Cal. 2022) and _Brown v. Kellogg Co._, 2022 WL 983268 (N.D. Cal. 2022), both of which are currently up on appeal. See _Nacarino v. Kashi Co._, No. 22-15377 (9th Cir.); _Brown v. Kellogg Co._, No. 22-15658 (9th Cir.).

adopted identical requirements. The vast majority of courts recognize that the FDCA expressly permits states to adopt identical regulations and allows citizens to enforce those parallel state requirements—meaning the claim cannot be impliedly preempted. *See Van's I*, 2022 U.S. Dist. LEXIS 84477, at *18 (collecting cases). Judges Orrick, Corley, and Hixson rejected the argument in accordance with the majority approach on identical claims. *Id.*; *see also Roffman*, 2022 U.S. Dist. LEXIS 159762, at *14; *Pino,* 2022 U.S. Dist. LEXIS 180804, at *11–12.

Rebbl's remaining arguments are unavailing. Rebbl argues that Plaintiff has no standing for the Products that she did not purchase. But all the challenged Products have identical claims and are substantially identical except for their flavor, which is irrelevant. Plaintiff has standing for injunctive relief because she has alleged, as required by *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), that she continues to wish to purchase the Products. Further, contrary to what Defendant argues, unjust enrichment is a valid cause of action in California. And finally, pursuant to Fed. R. Civ. P. 8(d)(3), Plaintiff is allowed to plead equitable and legal remedies in the alternative and she has pled specific facts as to why she may not be entitled to damages under the CLRA and seeks restitution under the UCL. The Court should deny the Motion.

## II.   BACKGROUND

### A.   Protein Quality Generally.

Protein claims have exploded recently, but consumers do not necessarily benefit nutritionally from the full amount advertised. ECF 1 at ¶¶ 2, 57–9. Humans can use some proteins more fully than others based on the protein's "quality", i.e., its digestibility and amino acid profile. *Id.* ¶¶ 3, 26–32. If a food lacks any of the essential amino acids, protein synthesis stops, and the remainder of that protein source degrades into waste. *Id.* PDCAAS is the FDA-mandated methodology to measure protein quality; it produces a discount factor (e.g., 0.5) that, when multiplied by protein quantity in grams shows how much protein a product provides nutritionally. *Id.* at ¶ 32. FDA regulations call this the "corrected amount of protein per serving." *See* 21 C.F.R. §§ 101.9(c)(7)(i)–(ii).

**B.     The Regulatory Framework.**

The FDA regulates what manufacturers may say about protein. In so doing, it recognizes the critical distinction between protein quality and quantity and imposes specific requirements to account for both quality and quantity of protein in a product's NFP.

All NFPs must state the quantity of grams of protein per serving. 21 C.F.R. § 101.9(c)(7). Manufacturers "may" use nitrogen testing to calculate that quantity, although they may also use other methods. 21 C.F.R. § 101.9(c)(7). The nitrogen method estimates protein quantity by multiplying the nitrogen content of a food by a standardized conversion factor; the NFP protein-quantity statement does not account in any way for the quality of a protein source.

Statements about protein on the front of a package are purely voluntary, but subject to a higher bar than NFP statements due to the impact of label claims on purchasing decisions. *See* 21 C.F.R. §§ 101.9(c)(7)(i)–(ii). Most importantly, the FDA permits voluntary protein claims outside of the NFP *only if* the manufacturer satisfies certain requirements. Section 101.9(c)(7)(i) provides that if a product makes a "protein claim" the manufacturer "*shall*" (1) calculate the "corrected amount of protein per serving" using the PDCAAS method, and (2) provide a "statement of the corrected amount of protein" inside the NFP immediately adjacent to the protein quantity figure "expressed as" a %DV. The purpose of this is to inform consumers about the amount of protein in the product the human body can actually use. ECF 1 at ¶¶ 4–5, 38. After all, as the FDA explained in published guidance, "protein quantity alone can be misleading on foods that are of low protein quality." 58 Fed. Reg. 2079, 2102 (emphasis added).

The regulations governing front label claims (i.e., nutrient content claims) also expressly condition a manufacturer's ability to make such claims upon providing all required information for that nutrient in the NFP. Section 101.13(n) states that "[n]utrition labeling in accordance with § 101.9, § 101.10, or § 101.36, as applicable, shall be provided for any food for which a nutrient content claim is made." Section 101.13(b) in turn provides that "a nutrient content claim[] may not be made on the label or in labeling of foods unless the claim is made in accordance" with all of § 101.13, which includes § 101.13(n), and, thus, by extension, § 101.9(c)(7)(i). Indeed, the FDA explicitly stated that § 101.13(n) means a manufacturer can only make "a nutrient content claim . . . on the label or in

labeling of a food, **provided** that the food bears nutrition labeling that complies with the requirements in proposed § 101.9." 58 Fed. Reg. 2302, 2310 (emphasis added). Because Rebbl did not comply with § 101.9(c)(7)(i), § 101.13 prohibited its front label claims.

### C.   Defendant's Products.

Rebbl emphasizes protein on the front labels of many of its products but fails to include the %DV for protein in the NFP. ECF 1 at ¶¶ 2, 5–6, 20, 38–9. This makes its front label protein claim and the NFP unlawful *per se*. The omission also makes Rebbl's front label protein claims misleading. Had Rebbl included a %DV in the NFP as it was required to do, it would have revealed that a significant portion of the protein Rebbl uses in its products is useless to humans because Rebbl's products consist of low quality protein sources. *Id.* ¶¶ 8, 32.

## III.   ARGUMENT

### A.   Plaintiff's UCL Unlawful Claims Withstand Dismissal.

#### 1.   Plaintiff adequately pleads her unlawfulness claim, including standing.

Section 17200's "unlawful" prong "borrows violations of other laws and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (Cal. Ct. App. 2012). "Virtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a section 17200 'unlawful' violation." *Id.* (internal quotation marks omitted); *see also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (same). This includes, as here, violations of California's Sherman Law. *See Morgan v. Wallaby Yogurt Co.*, 2013 U.S. Dist. LEXIS 144959, at *28–30 (N.D. Cal. Oct. 4, 2013).

#### i.   The front label claim is unlawful.

Plaintiff's UCL unlawful prong claim alleges that Rebbl violated the Sherman Law (which adopts the FDA regulations) by making a protein claim on the front label even though federal and state law prohibited it from doing so without a statement of the corrected amount of protein per serving in the NFP (expressed as a %DV). ECF 1 at ¶¶ 2, 5–6, 20, 38–9, 48.

This claim directly parallels the FDA regulations. Section 101.9(c)(7)(i) is clear: if a product makes a "protein claim" the manufacturer "**shall**" calculate the "corrected amount of protein per serving" expressed as a %DV in the NFP. Rebbl does not dispute that it failed this requirement. FDA

regulations governing nutrient content claims, in turn, condition a manufacturer's ability to make such claims upon full compliance with the regulations governing the NFP. Section 101.13(n) mandates that "[n]utrition labeling in accordance with § 101.9 . . . ***shall*** be provided for any food for which a nutrient content claim is made", while section 101.13(b) explicitly states that "a nutrient content claim[] ***may not be made on the label*** or in labeling of foods unless the claim is made in accordance" with all of the provisions of § 101.13, which includes § 101.13(n), and thus, by extension, § 101.9(c)(7)(i). Indeed, the FDA explained that it enacted § 101.13(n) to ensure that a manufacturer can only make "a nutrient content claim . . . on the label or in labeling of a food, ***provided*** that the food bears nutrition labeling that complies with the requirements of § 101.9." 58 Fed. Reg. 2302, 2310 (emphasis added). This reflects the FDA's historic emphasis on the importance of the holistic NFP, and its skepticism of isolated nutrient content claims. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("[T]he general rule is that 'nutrient content claims' are not permitted on food labels."). Because Rebbl failed to comply with § 101.9(c)(7)(i), it was not permitted to make any front label protein claims. Period.

The only courts to consider this "101.13(n) claim" are Judge Orrick in *Van's*, Judge Corley in *Roffman*, and Judge Hixson in *Pino*. All allowed it to proceed. *See Roffman,* 2022 U.S. Dist. LEXIS 159762, at *11; *Van's II*, 2022 U.S. Dist. LEXIS 154627; *Pino*, 2022 U.S. Dist. LEXIS 180804, at *11–12. Judge Corley specifically concluded that "Plaintiffs plausibly allege that the front-label protein claims are unlawful without corresponding PDCAAS figures on the nutrition facts panel." *Id*. She further held: "[b]ecause the alleged conduct is prohibited by FDA regulations, state law claims based on that conduct are not expressly preempted." *Id*.

Oddly, despite the fact this unlawfulness claim is the centerpiece of the complaint (*see* ECF 1 at ¶¶ 5–6, 20, 38–9, 48), Rebbl has not moved to dismiss it; rather, the Motion focuses almost exclusively on a fraud-based claim that Plaintiff asserts only for appeal purposes. *See* ECF 16 at ¶¶ 6–10. Indeed, nothing in the Motion disputes Plaintiff's interpretation of the regulations or the unlawfulness of its conduct. Presumably, it cannot do so and, regardless, is barred from doing so for the first time in its reply brief. *See Grammens v. Bankers Standard Ins. Co.*, 2022 U.S. Dist. LEXIS 21705, at *11 (N.D. Cal. Feb. 7, 2022).

Plaintiff has also adequately alleged standing. Where, as here, plaintiff pleads reliance on an unlawful label claim, and payment of a price premium, there is both Article III and statutory standing. *See Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979, 989 (9th Cir. 2015). The Complaint satisfies this standard because it alleges that Plaintiff "made each of her purchases after reading and relying" on Defendant's front labels "that promised the Products provided 16 grams of protein" and paid a price premium as a result. ECF 1 at ¶ 63. It further alleges that Plaintiff relied on the NFP, as explained further below.

### ii.    The NFP is unlawful.

Plaintiff separately alleges that Rebbl's NFP is itself unlawful due to the omission of a statement of the corrected amount of protein (expressed as a %DV). Rebbl does not attempt to argue that its NFP was lawful, and for good reason. Because Rebbl did not state the corrected amount of protein in the NFP, it violated §101.9(c)(7)(i) and the Sherman Law. ECF 1 at ¶¶ 5–6, 20, 38–9, 48.

Plaintiff adequately alleges standing to pursue this claim. She alleges reliance and a loss of money. A plaintiff establishes reliance on an omission by alleging that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 685 (N.D. Cal. 2021). Plaintiff here alleges that she would have been aware of the %DV had it been provided because she "looked at and read the NFP on the REBBL brand Plant Powered Elixir beverages before purchasing it for the first time" and "regularly checks the NFP before purchasing any product for the first time, including the %DV column for protein when manufacturers provide it." ECF 1 at ¶ 64. She also alleges she would have behaved differently by not purchasing the Products or paying less had the %DV been disclosed. *Id*. Judge Orrick found that virtually identical allegations "plausibly allege[]" reliance on the NFP. *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *18. Judge Corley and Judge Hixson did as well. *See Pino*, 2022 U.S. Dist. LEXIS 180804, at *8–9, *Roffman*, 2022 U.S. Dist. LEXIS 159762, at *11. They suffice here also.

### 2.    *Buckman* preemption does not apply to the unlawful claims.

The only argument Rebbl makes that could remotely involve the unlawful prong claim is implied preemption under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). It raises this

argument even though the vast majority of "courts in this District . . . routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675, *12–13 (N.D. Cal. 2015) (collecting cases).[2] Courts reject the argument because the FDCA's preemption provision expressly preserves parallel state law claims (21 U.S.C. § 343-1(a)(5)), and the Sherman Law simply adopts the FDCA and its regulations as the law of the state, and is, thus, completely parallel.

Judge Orrick recently conducted an in-depth analysis of whether *Buckman* impliedly preempts UCL unlawful prong claims predicated on violations of the Sherman Law and concluded it does not. *Van's I*, 2022 U.S. Dist. LEXIS 84477, at *18–23. He reasoned that, "[s]tates have traditionally possessed the power to protect their citizens from fraud and deception in the sale of food, and therefore there is a strong presumption against federal preemption in the area of marketing food." *Id.* at *19. When Congress enacted the NLEA, it "did not attempt to completely preempt state laws regarding the marketing of food products"; rather, it "specifically anticipated states enacting their own identical laws." *Id*. Since Congress left the door open to parallel state laws, "California complied with this requirement in passing the Sherman Law," which incorporates the federal regulations. *Id*. at *19–20. Thus, claims based on the Sherman Law avoid preemption. *Id*. at *21. Judge Corley recently agreed. *Roffman*, 2022 U.S. Dist. LEXIS 159762, at *14. As did Judge Hixson. *Pino*, 2022 U.S. Dist. LEXIS 180804, at *11–12.

These Courts' application of *Buckman* is entirely consistent with the plain language of the NLEA. Congress, through the preemption provision, evidenced a clear intention not to supplant state laws that are "identical" to FDA requirements. Using "implied preemption" here would bar the same claims Congress expressly stated it was allowing to exist. *See Wyeth v. Levine*, 555 U.S. 555, 575 (2009) ("The case for federal pre-emption is particularly weak where Congress has indicated its

---

[2] *See also Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1074 (S.D. Cal. 2019); *Swearingen v. Santa Cruz Nat., Inc.*, 2016 U.S. Dist. LEXIS 109432, at *7 (N.D. Cal. Aug. 17, 2016); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 929 (N.D. Cal. 2014); *Samet v. Procter & Gamble Co.*, 2013 U.S. Dist. LEXIS 86432, at *6 (N.D. Cal. June 18, 2013); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 954–58 (N.D. Cal. 2013); *Morgan v. Wallaby Yogurt Co.*, 2013 U.S. Dist. LEXIS 144959, at *6 (N.D. Cal. Oct. 3, 2013).

awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.").

*Buckman*'s reach is also far more limited than Rebbl contends. *Buckman* involved a manufacturer of a Class III medical device that allegedly made fraudulent representations ***to the FDA*** in the premarket approval process. *Buckman*, 531 U.S. at 347. The court ruled that the claims were preempted because they blatantly interfered with the FDA's responsibility to police fraudulent statements made to the agency itself, which was "hardly a field which the States have traditionally occupied," and thus, the presumption against preemption did not apply. *Id.* at 347. The plaintiff's "fraud-on-the-FDA" theory also ***depended*** entirely upon the existence of the federal regulatory scheme at issue. Were there no FDCA, the plaintiff's claim in that case ***could not have existed*** because there could be no "fraud-on-the-FDA" claims under state law. Nor was there any state law duty to provide information *to the FDA*. This is why almost all cases finding preemption under *Buckman* do so in the context of claims relating to the pre-market approval process.[3] As a result, *Buckman* stands for the unremarkable proposition that claims based purely on the FDCA are preempted, while claims based on parallel state laws, like the Sherman Law, are not. *See Roffman*, 2022 U.S. Dist. LEXIS 159762, at *14.

Rebbl advocates for a far broader reading of *Buckman*.[4] It contends that *Buckman* draws a bright-line rule that only "traditional state tort law" claims that "predate the FDCA" escape *Buckman*'s reach. ECF 16 at ¶ 12. The interpretation means that *Buckman* precludes even "identical" state law claims if they were enacted after the FDCA. Rebbl derives this concept from the concurrence in *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230, 1235 (9th Cir. 2013), which was cited in *Chong v. Kind LLC*, 2022 U.S. Dist. LEXIS 27438 (N.D. Cal. Feb. 15, 2022), an outlier opinion. In *Van's I*,

---

[3] Tellingly, most of the cases on which Rebbl relies involved pre-market FDA approval. ECF 16 at ¶ 10. *See Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 773 (C.D. Cal. 2019); *Goldsmith v. Allergan, Inc.*, 2011 U.S. Dist. LEXIS 6233, at *8 (C.D. Cal. 2011).
[4] Rebbl's reliance on *In re Trader Joe's Tuna Litigation*, 2017 WL 2408117, at *2 (C.D. Cal. June 2, 2017) is also inapposite. Rebbl relies on an early order in that case that dismissed state law claims that were not parallel to FDA requirements. The plaintiffs subsequently amended the complaint to allege violations of California's Sherman Law instead of purely the federal regulations. *See In re Trader Joe's Tuna Litig.*, 2017 U.S. Dist. LEXIS 164875, *9 (C.D. Cal. Oct. 3, 2017). The court then concluded that those claims—which are the ***exact claims at issue in this case***—were not preempted under *Buckman*. *Id.* at *15–16.

Judge Orrick analyzed *Chong* and refused to read *Buckman* "as sweeping so broadly." 2022 U.S. Dist. LEXIS 84477, at *22. He explained that the majority in *Stengel* did not agree with the supposed requirement that state law claims must "predate" the FDCA; rather, the majority "actually held that the FDCA 'does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the [FDCA].'" *Id*. Indeed, although *Stengel* and *Buckman* observed that pre-existing traditional state tort laws were preserved because that was the type of state law at issue in both cases, neither held that **only** such laws were preserved. *Stengel*, 704 F.3d at 1234–35; *Buckman*, 531 U.S. at 352–353. The FDCA itself expressly allows state laws that are "identical to the requirement[s]" of federal law; it does not distinguish between pre-existing state tort laws or other state laws. 21 U.S.C. § 343-1(a)(5).

Regardless, both the Sherman Law and UCL are "grounded in traditional categories of state law that involve consumer protection, false advertising, and food labeling, all of which fall within the traditional scope of the state's police powers and predate the FDCA." *Bruton v. Gerber Products Co*., 961 F. Supp. 2d 1062, 1084 (N.D. Cal. 2013); *see Ivie v. Kraft Foods Global, Inc*., 961 F. Supp. 2d 1033, 1044 (N.D. Cal. 2013) ("Unlike the situation in *Perez*, here, plaintiff's claims rest entirely on violations of California's Sherman Law counterparts that parallel federal requirements").

Rebbl's argument that the Sherman Law depends on the FDCA fails for this same reason. The Sherman Law derives its authority from the state's historic police power over food labels, not the FDCA itself. It is true that if the FDCA and its regulations "disappeared in a puff of smoke" California would have to re-write the Sherman Law to impose the same liability. *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *16. But what matters under *Buckman* is that California absolutely **could do so on its own accord**, which means that its ability to regulate the conduct at issue is independent of the FDCA. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1119 (N.D. Cal. 2013) ("[Plaintiff] is suing because Defendants' conduct allegedly violates California's Sherman Law, which could have imposed the exact same regulations even if the FDCA was never passed."); *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 574 (N.D. Cal. 2013) ("The Sherman Law is limited to the requirements of the FDCA. However, it exists independently of that law, and violating its requirements would be a valid state cause of action even if the FDA ceased to exist."); *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at

*15 (rejecting implied preemption and argument that "because if the 'FDCA ceased to exist, there would be nothing for the Sherman Law to incorporate'").[5]

### B. Plaintiff's CLRA and Fraud Claims Based on the Omission of the %DV are Not Expressly Preempted.

The FDCA preempts only those state law claims that impose requirements "not identical to" its own. *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018). Congress, thus, limited preemption to only state laws that "impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA." *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 951 (N.D. Cal. 2017); *see also Hawkins*, 906 F.3d at 770 (inquiry is whether "FDA regulations expressly permit the claim").

Plaintiff's primary theory of fraud/deception under state law is that Rebbl's front label protein claims deceived consumers by omitting a qualifying %DV statement in the NFP. The absence of the %DV made the front label protein claims misleading because, without the %DV, the front label claims lead consumers to believe that all of the advertised protein will be bioavailable. The %DV is designed to provide consumers insights into the quality of the protein (i.e., how much protein is actually useable by the human body), omitting it "enabled Defendant to conceal the fact that its Products consist of low-quality proteins derived from peas that simply do not provide all of the protein that quantity alone represents." ECF 1 at ¶ 41. Plaintiff further alleges that "[h]ad Defendant complied with the law, it would have revealed the Products provide significantly less protein than claimed." *Id.* at ¶ 22. Defendant does not dispute that this theory of deception and it is foreclosed from doing so on reply. *See Silver v. BA Sports Nutrition, LLC*, 2022 U.S. Dist. LEXIS 78302, at *20 n.8 (N.D. Cal. Apr. 29, 2022) (finding "new arguments in the reply brief" were improper and refusing to consider them). In any event, multiple Courts have affirmed this theory of deception. *See Van's I*, 2022 U.S. Dist. LEXIS 84477, at *17–18, 27 ("Brown's theory that the front-label claim is misleading because

---

[5] The Sherman Law's incorporation of the FDCA by reference "results from a consideration of practicalities" not from dependence on the FDCA. *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1084–85 (C.D. Cal. 2017). "If California were required to update its statutes every time the federal government changed a standard, it would constantly have statutes stating standards that did not mirror the federal scheme, which would then be expressly preempted . . ." *Id.*

of the missing information in the Nutrition Facts panel appears plausible"); *Nature's Path*, 2022 U.S. Dist. LEXIS 42760, at *11 (similar).

The federal regulations plainly do not permit front label protein claims in the absence of this information. 21 C.F.R. § 101.13(n) & (b), *id.* § 101.9(c)(7)(i). Judges Orrick and Gilliam have held that this deception claim is not expressly preempted for this reason.[6] *See Van's I*, 2022 U.S. Dist. LEXIS 84477, at *17–18 (finding that the theory "is not expressly preempted by FDA regulations because it is based on an alleged violation of FDA regulations"); *Nature's Path*, 2022 U.S. Dist. LEXIS 42760, at *15 n.6. (holding that the claim "[is] clearly not expressly preempted by FDA regulations because [it is] explicitly based on violations of specific FDA regulations").

## C.      Rebbl's Other Arguments are Without Merit.

### 1.      Plaintiff has standing for injunctive relief.

Rebbl argues that Plaintiff lacks standing to seek an injunction because she is aware of the labelling deficiencies and purportedly does not allege an intent to purchase the products in the future. *See* ECF 16 at ¶¶ 15–17. Judge Orrick and Judge Hixson rejected both arguments in *Van's I* and *Pino* respectively. *See Van's I*, 2022 U.S. Dist. LEXIS 84477, at *29–31; *Pino*, 2022 U.S. Dist. LEXIS 180804, at *7.

As to the first, the Ninth Circuit has held that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer knows or suspects that the advertising was false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). The ability to fact-check a claim by looking at the back does not change the injury a plaintiff plausibly suffers when confronting front labels while shopping. *See Ries v. Arizona Iced Tea*, 287 F.R.D. 523 (N.D. Cal. 2012) (allowing plaintiffs to seek an injunction against the "All

---

[6] Judge Orrick and Judge Gilliam held that the claim is legally plausible and not preempted, though they dismissed the claim with leave to amend to allege that the plaintiffs relied upon the NFP. Here, Plaintiff has pleaded reliance on the NFP. *See* ECF 1 at ¶ 64 ("[Plaintiff looked at and read the NFP on the Rebbl brand Plant Powered Elixir beverages before purchasing it for the first time" and "Had Defendant adequately disclosed the corrected amount of protein per serving for each Product expressed as a %DV, Plaintiff would not have purchased the Products or would have, at a minimum paid less for them."). Upon amendment, Judge Orrick upheld the claim based upon identical reliance allegations to those here. *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *2–3 (allowing "unlawfulness per se" claim to proceed despite reliance challenge).

Natural" representations even though high fructose corn syrup and citric acid, the ingredients that rendered the "all natural" claim false and misleading, were listed on the products' ingredient list) (cited with approval in *Davidson*, 889 F.3d at 969); *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (holding that plaintiff's ability to check the amount of added sugar on the NFP did not preclude the possibility that the plaintiff could be misled by statements on the front label).

As to the second, Plaintiff has adequately alleged an intent to purchase the products in the future. She alleges that she continues to desire to purchase the Products, would likely purchase the Products again if the Products were relabeled or reformulated to contain the amount of useable protein represented on the label, and that she regularly visits stores where the Products are sold. ECF 1 at ¶ 66. This suffices to confer standing, as confirmed by the Ninth Circuit in *Davidson*. *See* 889 F.3d at 966–72 (plaintiff properly alleged a "threat of imminent or actual harm by not being able to rely on [the] labels in the future" that is "sufficient to confer standing to seek injunctive relief"); *see also Van's I*, 2022 U.S. Dist. LEXIS 84477, at *30–31 ("[But 'reformulated' may mean that the Products are relabeled, not that the ingredient composition is altered. In this light, Brown's allegation satisfies *Davidson*'s first example of future harm."). Defendant's reliance on *Lanovaz v. Twinnings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) is misplaced because it involved a plaintiff who *testified* that he would not purchase the product again.

### 2.   Plaintiff has standing for products she did not purchase.

Rebbl argues that Plaintiff lacks standing as to the unpurchased products. ECF 16 at ¶¶ 13–15. Even courts that construe the issue as one of standing (as opposed to typicality) still allow class claims to proceed as to unpurchased products so long as the claims are substantially similar. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Plaintiff easily satisfies the test here. She alleges the same UCL unlawful prong claim with respect to all products— i.e. that the front label protein claim and the NFP are unlawful—due to a failure to include a %DV in the NFP. Plaintiff also alleges that all products were identical in the ways that are critical for the claims—i.e., that all products made a protein claim on the front, and all failed to provide a %DV in the NFP. *See* ECF 1 at ¶¶ 18–21, 40, 48. Plaintiff's misleading prong claims based on the omission of the %DV are also substantially similar across all products. Plaintiff alleges that none of the

products consisted of high quality proteins and that the inclusion of a %DV would have revealed that material fact to consumers. *Id. See also Gitson v. Trader Joe's Co.*, 63 F. Supp. 3d 1114, 1117 (N.D. Cal. 2014). Accordingly, resolving "the asserted claims will be identical between the purchased and unpurchased products" as for all of Plaintiff's claims. *Ang v. Bimbo Bakeries USA, Inc.*, 2014 U.S. Dist. LEXIS 34443, at *8 (N.D. Cal. Mar. 13, 2014).

### 3.   Plaintiff adequately pleads an unjust enrichment claim.

Rebbl challenges Plaintiff's unjust enrichment claim with the often repeated, but almost invariably rejected, argument that there is not a "separate cause of action for unjust enrichment" in California. ECF 16 at ¶ 17. It is well-established that "standalone" unjust enrichment claims are permissible in California under certain circumstances. *See Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020) (denying motion to dismiss plaintiff's claim for unjust enrichment when presented with the same argument); *see also Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (noting that the California Supreme Court has allowed independent claims for unjust enrichment to proceed); *Robinson v. Wells Fargo Home Mortg.*, 2016 U.S. Dist. LEXIS 152925, at *17 (N.D. Cal. 2016). Even where courts have found no standalone claim for "unjust enrichment" in California, they still "construe the cause of action as a quasi-contract claim seeking restitution." *Locklin v. StriVectin Operating Co.*, 2022 U.S. Dist. LEXIS 52461, at *7–8, *citing Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014); *Astiana v. Hain Celestial Grp., Inc.*, 783 F. 3d 753, 762 (9th Cir. 2015) (stating that courts can construct "unjust enrichment" claims as a quasi-contract claim seeking restitution).

Next, a plaintiff is "permitted to plead an unjust enrichment claim in the alternative." *Loop AI Labs, Inc. v. Gatti*, 2015 U.S. Dist. LEXIS 117268, at *23 (N.D. Cal. Sep. 2, 2015); *see also In re Facebook, Inc.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (holding "plaintiffs are permitted to plead claims for breach of contract and unjust enrichment in the alternative."); *In re S.C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 141101, at *26–27 (N.D. Cal. July 28, 2021) ("Therefore, at this stage, the Court will construe the cause of action as a quasi-contract claim seeking restitution, as it has done in prior cases"); *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1080 (N.D. Cal. 2020) (noting that "this Court has held that a claim for unjust enrichment may be asserted under California

law, and that such a claim is not subject to dismissal at the pleading stage even if duplicative of other claims"). Otherwise stated, a claim for unjust enrichment that is, as here, pleaded in the alternative, may be duplicative. The Ninth Circuit has, in fact, specifically held that a district court errs when it dismisses an "unjust enrichment" claim as "duplicative of or superfluous of" other claims. *Astiana*, 783 F.3d at 762–63.

### 4.    Plaintiff adequately pleads that she lacks an adequate remedy at law.

Relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) , Rebbl argues that Plaintiff's claims for equitable restitution under the CLRA, FAL, and UCL must be dismissed because Plaintiff only "offers the conclusory allegation that they 'have no adequate remedy at law to obtain this restitution.'" ECF 16 at ¶ 17. This is false. For one, Plaintiff does not seek equitable restitution under the CLRA. Plaintiff seeks damages under the CLRA, not restitution. Second, Rebbl misapplies *Sonner*. And third, Rebbl ignores Plaintiff's detailed allegations providing specific reasons why she has no adequate remedy at law.

Rebbl's reliance on *Sonner* is misplaced. In that case, after four years of litigation and on the eve of trial, the plaintiffs voluntarily dismissed their only legal claim (for deception under the CLRA) in an attempt to secure a bench trial, rather than a jury trial, on their fraudulent-prong-UCL claim, which the court held the plaintiffs could not do. *Id.* at 837–38. The CLRA claim had already survived a motion for summary judgment, and the plaintiffs had never alleged that they lacked an adequate legal remedy in their complaint. *Id.* at 844. The Court held that federal law governed the question of whether a plaintiff must lack an adequate remedy at law before a court may issue injunctive relief, and that plaintiff had failed to do so. *Id.*[7]

"Putting aside *Sonner*'s unique procedural posture, the case did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories." *See Brown*, 2022 U.S. Dist. LEXIS 42760, at *14 n.5; s*ee also Sagastume v. Psychemedics Corp.*, No. CV 20-6624, 2020 U.S. Dist. LEXIS 247754, at *21 (C.D. Cal. Nov. 30, 2020); *Shay v.*

---

[7] Plaintiff preserves for appeal that *Sonner* wrongly applied federal law in a diversity case. Since California state law holds that an inadequate legal remedy is not required to issue equitable relief, that holding is outcome determinative as to all equitable claims under state law, and therefore should govern under *Erie. See Hanna v. Plumer*, 380 U.S. 460, 467–69 (1965).

1    *Apple Inc.*, No. 20cv1629, 2021 U.S. Dist. LEXIS 4033, at *23 (S.D. Cal. Jan. 8, 2021) ("Plaintiff

2    may plead in the alternative but she must also allege she lacks an adequate legal remedy."); *In re Juul*

3    *Labs, Inc.*, No. 19-md-02913-WHO, 2020 U.S. Dist. LEXIS 197766, at *225–226 n.67 (N.D. Cal.

4    Oct. 23, 2020) (granting plaintiffs "leave to amend to expressly allege that their remedies at law are

5    inadequate and to support their claim to equitable restitution under the UCL and FAL"). Here,

6    Plaintiff's pleads that her UCL unlawful claims are not coextensive with her legal claims. ECF 1 at ¶

7    113. Thus, she has no adequate remedy at law for her unlawful UCL claims because they have no

8    legal corollary and she may plead her unlawful theories in the alternative. *See Elgindy v. AGA Serv.*

9    *Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269, at *46 (N.D. Cal. Mar. 29, 2021) (plaintiff

10   entitled to pursue equitable relief for unlawful UCL claim).

11          With respect to her claims based on the deceptiveness of Defendant's conduct, as explained

12   above, Plaintiff is entitled to plead remedies in the alternative and does in fact allege that she has no

13   adequate remedy at law because the elements necessary to prove a UCL fraudulent prong claim are

14   not identical to the elements of a CLRA claim or common law fraud claim, which provide legal

15   damages. *See* ECF 1 at ¶ 114. "[T]he CLRA and UCL's remedies are not exclusive, but are in addition

16   to any other procedures or remedies for any violation or conduct provided for in any other law."

17   *Madani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926, at *26 (N.D. Cal. Aug. 8,

18   2019) (citation omitted). "[A]t the pleading stage, theories of equitable remedies are not barred by a

19   plaintiff adequately pleading theories supporting monetary relief." *Id.* at *27.

20          **D.    Plaintiff Requests Leave to Amend If Necessary.**

21          If a complaint is dismissed for failure to state a claim, "leave to amend should be granted

22   unless the Court determines that the allegation of other facts consistent with the challenged pleading

23   could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

24   1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the

25   amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

26   Should this Court find the Complaint insufficient, Plaintiff requests leave to amend.

27

28

Dated: December 8, 2022.

**GUTRIDE SAFIER LLP**

*s/ Seth A. Safier*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*