UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHVA ROFFMAN,<br><br>    Plaintiff,<br><br>v.<br><br>REBBL, INC.,<br><br>    Defendant. | Case No. 22-cv-05290-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Now before the Court for consideration is the motion to dismiss filed by Defendant Rebbl, Inc. ("Rebbl"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b); N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for February 3, 2023, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Rebbl's motion.

## BACKGROUND[1]

Rebbl manufactures, advertises, distributes, and sells Plant Powered Elixir beverages. On the front of the label, Rebbl states that the products contain a specified amount of protein. For example, Roffman alleges that she purchased the Dark Chocolate, Vanilla, and Coffee flavors, which included representations on the front label that they contained 16 grams of protein (the

---

[1] This case is one of a number of recent cases raising challenges to protein claims on food labels, including another case brought by Plaintiff Mehva Roffman ("Roffman") and her counsel. *See, e.g., Roffman v. Perfect Bar, LLC*, No. 22-cv-02479-JSC, 2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ("*Perfect Bar*"); *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-00001-WHO, -- F. Supp. 3d --, 2022 WL 3590333 (N.D. Cal. Aug. 22, 2022) ("*Van's II*"); *Chong v. Kind, LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022).

1

"Products"). (Compl. ¶ 2; *see also* Ex. B.)[2]  That representation is consistent with the amount of protein listed in the Products' nutrient facts panel ("NFP").  (*Id.* ¶ 20 (photo of front and NFP of the Vanilla Product).)  Roffman claims that representation is misleading and unlawful because the primary source of protein used in the Products is pea protein, which is not fully digestible.  As a result, she claims the amount of protein that can be used is far less than 16 grams.  (*Id.* ¶¶ 5-6, 23-33.)

   Regulations promulgated by the Food and Drug Administration ("FDA") require manufacturers to include the quantity of grams of protein per serving in NFPs.  *See* 21 C.F.R. § 101.9(c)(7); *see also Swartz v. Dave's Killer Bread, Inc.,* No. 21-CV-10053-YGR, 2022 WL 1766463, at *3-4 (N.D. Cal. May 20, 2022) ("*Swartz I*") (discussing regulatory background); *Brown v. Van's Int'l Foods, Inc.*, No. 22-00001-WHO, 2022 WL 1471454, at *1-2 (N.D. Cal. May 10, 2022) (same) ("*Van's I*"); *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 807-09 (N.D. Cal. 2022) (same) ("*Kashi Co.*").  In terms of quantity, FDA regulations permit a manufacturer to use the "nitrogen method" to calculate the grams of protein per serving.  Protein quality can be measured by the "protein digestibility-corrected amino acid score" ("PDCAAS").  *See Kashi Co.*, 584 F. Supp. 3d at 808.

   A manufacturer may include information about protein content outside of the NFP, for example on the front of the product (a "nutrient content claim"), but if it makes such a claim, the NFP must include a "statement of the corrected amount of protein per serving, expressed as a Percent of Daily Value [%DV]," which "takes the actual amount of protein from the nutrition label and adjusts it for digestibility based on the" PDCAAS.  *Id.* (quoting 21 C.F.R. §§ 101.9(c)(7)(i)(ii)).  In 2022, the FDA issued guidance and explained "that use of total or corrected protein, calculated using the nitrogen content method or PDCAAS respectively, are appropriate for nutrient content claims."  *Swartz I,* 2022 WL 1766463, at *4 (citing *Industry Resources on the Changes to the Nutrition Facts Label,* U.S. Food & Drug Administration) ("2022 Nutrient Content Claim Guidance")).[3]  Federal regulations also provide that a product's packaging may include a

---

[2] Exhibit B was filed separately and is located at Docket No. 7.
[3] *See* https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-

2

statement about the amount or percentage of a nutrient, like protein, as long as the statement "is not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3).

Roffman alleges that she read and relied on front label before she purchased the Products and believed that the Products "would actually provide the specific amount of protein claimed on the front labels in a form human bodies could utilize." (*Id.* ¶ 63.) Roffman also alleges that she regularly checks the NFP before purchasing any product for the first time. (*Id.* ¶ 64.) According to Roffman, had she known the Products did not contain the amount of protein on the front of the label or had Rebbl disclosed the corrected amount of protein as a %DV in the NFP, she would not have purchased the Products or would have paid less for them. (*Id.* ¶¶ 63-64.)

However, "if the Products were reformulated to provide, in a usable form, the grams of protein that are represented on the labels, or the labels were reformulated to provide non-misleading information, [Roffman] would likely purchase them again in the future. [Roffman] regularly visits stores where the Products and other protein products are sold." (*Id.* ¶ 66.) Roffman alleges that absent an injunction, she will be unable to rely on Rebbl's labels when shopping for Products in the future. (*Id.*)

Based on these and other facts that the Court will address as necessary, Roffman asserts claims on behalf of herself and putative classes for alleged violations of California's Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), Unfair Competition Law("UCL"), as well as common law claims for fraud and unjust enrichment.

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.    Applicable Legal Standards.**

Rebbl moves to dismiss for lack of Article III standing and for failure to state a claim. A lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "facial" attack accepts the

---

nutrition-facts-label (last visited Jan. 31, 2023).

truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6). *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

A court's inquiry under Rule 12(b)(6) "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to Twombly, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g., Reddy v. Litton Indus. Inc.*, 912 F.3d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.  Rebbl's Standing Arguments.**

   **1.  Standing to Seek Injunctive Relief.**

In order to show she has standing to seek injunctive relief, Roffman must allege she "has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [she] will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The latter inquiry turns on Roffman alleges facts to show a "real and immediate threat of repeated injury." *Id.* The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an injury in fact for injunctive relief purposes. *Davidson v. Kimberly-Clark Corp.*, 889

4

F.3d 956, 967 (9th Cir. 2018).

Rebbl argues Roffman is "now fully aware that REBBL's front-of-pack protein claim is a statement of the absolute quantity of protein that mirrors the [NFP], that plant based proteins are not always fully digested by humans, and that REBBL uses plant-based proteins in" the Products. (Mot. at 16:20-27.) It argues those facts demonstrate Roffman cannot plausibly allege a risk of future harm because she has the information she needs to make informed purchasing decisions. The Court is not persuaded.

Roffman alleges that she "does not know the formula for Defendant's products, which can change over time, and cannot test whether the Products provide the amount of digestible protein that is represented on the label without first purchasing the Product." (Compl. ¶ 66.) The Court concludes Roffman sufficiently alleges facts to support her claims for injunctive relief. *See, e.g., Pino v. Birch Benders, LLC,* No. 22-cv-01294-TSH, 2022 WL 4913320, at *2 (N.D. Cal. Oct. 3, 2022); *Vans I,* 2022 WL 1471454, at *11.

**2. Standing Based on Products Roffman Did Not Purchase.**

Rebbl also argues that Roffman does not have standing to pursue claims based on products she did not purchase, including those listed in Exhibit B. "[T]here is no controlling authority [in the Ninth Circuit] on whether Plaintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). Rebbl invites the Court to reject the approach used by a majority of courts in this District, which have held "that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869; *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082-83 (N.D. Cal. 2014) ("Courts in this district have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products."). The Court has previously followed this approach and declines Rebbl's invitation.

"[C]ourts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling" when deciding whether products are substantially

5

similar. *Figy*, 67 F. Supp. 3d at 1083. Courts have found that diverse products bearing similar labels are "substantially similar." *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *4 (N.D. Cal. May 5, 2021) (collecting cases). Once a court determines the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

Although Roffman only includes an image of one of the Products at issue, she alleges that the NFPs "on the back of the Products uniformly and consistently failed to provide any statement of the corrected amount of protein per serving, expressed as a %DV, throughout the Class Period." (Compl. ¶ 20.) She also alleges that the image included in the Complaint is consistent with the way in which the NFPs have appeared. (*Id.*)

The Court concludes the allegations are sufficient to plead the labels are substantially similar and that Roffman has standing to pursue claims based on products she did not purchase.

C. **Rebbl's Preemption Arguments.**

Roffman relies on three theories to allege that Rebbl's protein claims give rise to liability under state law. First, she alleges that Rebbl's labels are unlawful because it made a nutrient content claim on the front label and failed include the corrected amount of protein, based on the PDCAAS and expressed as a %DV, in the NFP. (Compl. ¶¶ 6-7.) Second, she alleges that same conduct renders the front label claim misleading. (*Id.* ¶ 8.) The Court refers to these two theories as the "NFP Omission theories." Finally, Roffman alleges that the nutrient content claim on the front of the label is inherently misleading because it uses the nitrogen method and does not account for the quality of the protein. (*Id.* ¶ 9.) The Court refers to this theory as the Front Label Protein Claim.

1. **Express Preemption.**

Roffman concedes that the Front Label Protein Claim is preempted. Accordingly, the Court dismisses claims based on that theory with prejudice.[4] *See, e.g., Pino*, 2022 WL 4913320,

---

[4] Roffman states asserts this theory solely to preserve the argument for appeal, in the event the Ninth Circuit reverses *Kashi Co.* and *Brown v. Kellogg Co.*, No. 21-cv-7388-VC, 2022 WL

6

at *4; *Perfect Bar,* 2022 WL 4021714, at *7-8; *Swartz I,* 2022 WL 1766463, at *3-*5; *Van's I,* 2022 WL 1471454, at *5-6.

Turning to the NFP Omission theories, the Court finds the reasoning in *Perfect Bar* persuasive and concludes that Roffman's claim that the NFP Omission renders the labels *unlawful* is not preempted. *Perfect Bar*, 2022 WL 4041714, at *4.

Roffman argues that the NFP Omission theory is her primary theory of fraud and deception. (Opp. Br. at 10:10-12.) The Court finds this theory presents a closer question, and courts in this District appear to be divided. For example, in *Perfect Bar*, the court followed *Nacarino* and held the claim was expressly preempted. 2022 WL 4021714, at *7. In contrast, in *Van's I,* the court concluded the claim appeared plausible. 2022 WL 1471454, at *6. The Court concludes this issue warrants further development, and it DENIES Rebbl's motion to dismiss claims based on this theory without prejudice. Rebbl may renew this argument by way of a motion for summary judgment or a motion for judgment on the pleadings, and the parties shall be prepared to address in more detail the impact of the 2022 Nutrient Claim Guidance on the FDA regulations requiring manufacturers to include the %DV in the NFP when they make a nutrient content claim outside the NFP.

**2.    Implied Preemption.**

Roffman bases her UCL claim, in part, on alleged violations of California's Sherman Law, which has incorporated the federal Food, Drug, and Cosmetics Act ("FDCA") and its implementing regulations into state law. *See, e.g.,* Cal. Health & Safety Code § 110100(a). Rebbl argues that despite her allegations to the contrary, Roffman is attempting to enforce the FDCA and the claims are impliedly preempted pursuant to *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

The court in *Chong* concluded that claims based on the NFP Omission theory were impliedly preempted. That court reasoned the plaintiffs did not rest their claims on pre-existing, traditional tort claims. Instead, the claims were entirely dependent upon the FDCA. 585 F. Supp.

---

983268 (N.D. Cal. Apr. 1, 2022).

7

3d at 1219; *see also Davidson v. Sprout Foods, Inc.*, No. 22-cv-01050-RS, 2022 WL 13801090, at *4 (N.D. Cal. Oct. 21, 2022) (following *Chong*). In contrast, the court in *Van's I* concluded such claims here were not impliedly preempted. It noted that the plaintiff expressly disclaimed any reliance on the FDCA and concluded the *Chong* court's reading of *Buckman* was too broad, especially in light of "the strong presumption against federal preemption in the area of marketing food." 2022 WL 1471454, at *7-8 (quoting *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013)).

"[C]ourts in this District … routinely reject the argument that the [Supreme] Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886, at *4 (N.D. Cal. July 13, 2015) (collecting cases); *see also Van's I*, 2022 WL 1471454, at *8 (citing cases). As in *Van's I* and *Perfect Bar*, Roffman expressly states she disclaims causes of action under the FDCA and regulations promulgated by the FDA and relies on them "only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability" for her enumerated claims for relief. (Compl. at 24:21-26.) In addition, as in those cases, Roffman's claim based on the omission of %DV in the NFP "parallels" the federal requirements.

In light of the allegations here, the Court finds the reasoning in *Van's I, Perfect Bar,* and *Pino* more persuasive than *Chong* and concludes Roffman's claims that the NFP Omission theory based on unlawfulness is not impliedly preempted. (*See also* Dkt. No. 31, Plaintiffs' Statement of Recent Decision, *Swartz v. Dave's Killer Bread*, No. 21-cv-10053-YGR, Dkt. No. 46, Order Denying Motion to Dismiss at 4:11-5:6.) For the reasons set forth in the preceding section, the Court DENIES Rebbl's motion without prejudice to the extent Roffman relies on the NFP Omission theory to show the labels are misleading.

D.  **Rebbl's Additional Arguments.**

    1.  **Equitable Monetary Relief.**

Rebbl argues Roffman fails to allege that her legal remedies are inadequate and, therefore, cannot state a claim for equitable monetary relief. It is well-established that claims for relief under

8

the FAL and the UCL are limited to restitution and injunctive relief. *See, e.g., Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1146-49 (2003). In contrast, the CLRA provides for equitable relief and for damages. In *Sonner v. Premier Nutrition, Inc.*, the Ninth Circuit held "that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." 971 F.3d 834, 843-44 (9th Cir. 2020). There, the plaintiff dropped her claims for damages shortly before trial. Because the plaintiff failed to allege an adequate legal remedy in her complaint and conceded her claim for restitution was the same amount of money she had been seeking in damages, the court determined she failed to state a claim for relief. "Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete[.]" *Id.* at 844.

Roffman argues that *Sonner* is distinguishable because of the procedural posture of that case, but this Court does not find that argument persuasive. *See, e.g., Gardiner v. WalMart, Inc.*, No. 20-cv-4618-JSW, 2021 WL 4992539, at *7 (N.D. Cal. July 28, 2021). Roffman does allege that "if the Court requires [her and the putative class] to show classwide reliance and materiality beyond the objective reasonable consumer standard" and that if she and the putative class are not able to demonstrate the requisite *mens rea*, they may be unable to obtain damages. (Compl. ¶¶ 92, 114.) Roffman does not suggest that she seeks a different amount in damages than she does in restitution. In addition, Roffman's allegations about the inadequacy of legal remedies are conditional. *See, e.g., Johnson v. Trumpet Behavioral Health, LLC*, No. 3:21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (concluding conditional allegations insufficient to plead that plaintiffs actually lacked an adequate remedy of law).

The Court concludes the "allegations do not establish that the damages she seeks are necessarily inadequate or incomplete. That is, [Roffman's] 'inability to obtain damages here [would result] from her CLRA [and common law] claims' failure on the merits" not that there "there is an inherent limitation of the legal remedy that renders it inadequate." *Hanscom v. Reynolds Consumer Prods.*, No. 21-cv-3434-JSW, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022) (quoting *Nacarino v. Chobani, LLC*, No. 20-cv-7437-EMC, 2021 WL 3487117, at *12

9

(N.D. Cal. Aug. 9, 2021)).

Accordingly, the Court GRANTS Rebbl's motion, in part, and will grant Roffman leave to amend her allegations regarding the inadequacy of her legal remedies.

### 2. Unjust Enrichment.

Finally, Rebbl moves to dismiss Roffman's unjust enrichment claim. Because the Court concludes Roffman fails to allege facts showing that her legal remedies are inadequate, the Court GRANT Rebbl's motion to dismiss this claim, with leave to amend.

### CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Rebbl's motion to dismiss. If Roffman chooses to amend, she shall file an amended complaint by no later than February 22, 2023, and Rebbl shall answer or otherwise respond within the time permitted under the Federal Rules.

Pending further Order of the Court, the initial case management calendar remains scheduled for February 24, 2023 at 11:00 a.m. The Court ORDERS the parties to file an updated joint case management conference statement by February 17, 2023.

**IT IS SO ORDERED**.

Dated: January 31, 2023

_____
JEFFREY S. WHITE
United States District Judge